JEROME POWELL EDMONDS a/k/a JEROME POWELL AND HENRY GARFIELD STANLEY *v.* STATE OF MARYLAND

[No. 364, September Term, 1967.]

---

*Decided September 19, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*H. Rutherford Turnbull, III,* for appellants.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Robert A. DiCicco* and *Clewell Howell, Jr., Assistant State's Attorneys for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellants were convicted by the court sitting without a jury of (a) breaking a specified outhouse (storehouse) of Goodyear Service Stores with intent to steal goods of the value of $100.00 and upwards, and (b) with breaking into said premises and stealing therefrom designated goods of a value of $5.00 and upwards. Each appellant was sentenced to eight years imprisonment. On this appeal they jointly contend (1) that the trial court erred in admitting in evidence their fingerprint records on file with the Baltimore County Bureau of Identification since they contained their past criminal histories, and (2) that the evidence was insufficient to justify their convictions.

There was evidence adduced at the trial showing that sometime between the hours of 12:15 a.m. and 7:50 a.m. on June 10, 1967, the Goodyear Service Store in Baltimore County was broken into and goods of a value in excess of $2,200.00 were

stolen. Entry had been made by breaking out a 22″ x 33″ pane of glass in a ground level overhead-type door.[1] The broken glass had been neatly stacked in a pile alongside the door. An office within the building, partially enclosed by glass, had also been entered by cutting out a pane of glass. A piece of cut glass was found on the office desk. Both the outer door and the interior office were located in areas accessible to and used by the general public.

Corporal Edward Vanik of the Baltimore County Crime Laboratory processed the crime scene shortly after 9:00 a.m., at which time he lifted a number of latent fingerprints from the broken glass fragments. Testifying with reference to the prints which he obtained from the broken glass found at the outer door, Vanik stated that the prints were so located "that whoever removed the glass deposited these prints on same, because I received prints from both sides of the glass at the edge in a way that it would have to have been placed on there by the subjects who removed the glass from the door." Vanik further testified to lifting fingerprints from the glass fragment found on the desk in the interior office. The officer also stated that all of the latent fingerprints lifted by him on both sides of the broken glass were less than a day old.

Sergeant William D. Krause, a fingerprint expert, testified that he compared the latent prints on the broken glass found at the outer door and in the building office "with the known set of fingerprints." When asked the results of that comparison, the appellant Stanley objected on the ground that "there's no basis for what he is comparing to," so that "he cannot now testify as to whether there was a likeness or non-likeness." The court sustained appellant Stanley's objection. Sergeant Krause then testified without objection that he compared the latent fingerprints with "two sets of fingerprint cards," (containing ink rolled impressions) one belonging to each appellant and identified by their Baltimore County Bureau of Identification number. Asked as to his conclusions following these comparisons, appellant Stanley again objected on the ground that in-

---

1. Such a door, when opened, slides into the ceiling of the building.

troduction of the fingerprint card would be prejudicial since it would indicate that the subject of the card had been arrested. The court did not directly rule on the objection, but permitted Sergeant Krause to testify that appellant Stanley had been fingerprinted on February 25, 1963, March 20, 1966, and August 20, 1967. Appellant Stanley again objected on the ground that such testmony indicated the existence of a prior criminal record, noting at the same time that the fingerprint cards in question, together with photographs and police cards, were "spread out" before Sergeant Krause four or five feet from the bench, "all of which is to the absolute prejudice of the defendant." Appellant Edmonds expressly waived any objection on the same ground. The court, after noting that testimony as to a prior criminal record of the accused is generally inadmissible, then stated:

> "* * * I don't see how the mere fact that they have a card of this nature you can infer or assume that there have been convictions. I think all it would show, at most, would be an arrest and maybe not even that much, because, they can obtain a card on a voluntary basis, or a print on a voluntary basis."

Against this background, Sergeant Krause was then asked on direct examination as to the results of such comparison and appellant Stanley again objected, this time on the ground that the fingerprint cards had not been admitted in evidence. The court ruled, in effect, that there was no necessity to put the cards in evidence and that "they're not going to be allowed in evidence, I don't think." Sergeant Krause then testified that the latent prints were those of appellants Stanley and Edmonds.

On cross-examination appellant Stanley's counsel asked Sergeant Krause in effect to explain the nature of the Baltimore County Police Bureau fingerprint cards, counsel inquiring specifically of Krause:

> "What would those records indicate to you, I don't have any idea, we haven't seen them, they haven't been introduced in evidence, would you tell his Honor what the records are, what they mean?"

Krause replied that on a certain day fingerprint impressions of the subject are ink rolled on the card. Krause was then asked by Stanley's counsel whether the card indicated that the subject was a member of "the postal service, or were they in the armed forces, or was this a security check to get a job with the Government or what?" Krause responded that the subjects were either arrested for investigation or were charged with some offense. Appellant Stanley's counsel then directed Krause to read what was on the card and Krause said:

> "One card indicates August 20, 1967, investigation of breaking and entering, and on February 25, 1963, it has larceny of guns, in parenthesis, shoplifting laws. March 20, 1966 it has on it the charge of grand larceny."

Following these self-induced testimonial revelations concerning the nature of the fingerprint cards, and of the offenses with which Stanley had been charged, he then objected thereto on the ground that the card indicated that he had a prior police record. On redirect examination of Sergeant Krause, the State introduced without objection appellant Edmonds's fingerprint card dated August 23, 1967; and also introduced, over objection, appellant Stanley's card dated March 20, 1966.

Neither appellant testified and no evidence was offered on their behalf. The court found each appellant guilty on the evidence of their fingerprints found at the scene of the crime considered in the light of all the attendant circumstances.

I

Appellants contend that the trial court committed prejudicial error when it admitted into evidence their Baltimore County Police Bureau fingerprint cards which contained their criminal histories, since they were thereby denied their constitutional right to a fair trial.

As to appellant Edmonds, when his fingerprint card was offered in evidence, his counsel examined it and offered to stipulate that Edmonds was arrested on August 23, 1967. No objection was entered at any time during the trial to the finger-

print card or to any testimony concerning it. Since the contention that Edmonds's fingerprint card was erroneously admitted was not raised or decided below, it is not properly before us for appellate review. See Maryland Rule 1085. The admissibility of Edmonds's fingerprint card is thus not an issue within the scope of this appeal. *Baker v. State,* 3 Md. App. 251; *Anthony v. State,* 3 Md. App. 129; *Bell v. State,* 2 Md. App. 471.

As to appellant Stanley, it is entirely clear from the record that Sergeant Krause's testimony concerning the existence of appellants' fingerprint cards among the records of the Baltimore County Bureau of Identification came in without objection on the State's direct examination and as a result of Stanley's insistence that a proper foundation be laid before the Sergeant could be permitted to testify as to his identification of the latent fingerprints found at the crime scene as being those of appellants. We think it plain that the State's only purpose in making reference to appellants' fingerprint cards was to identify the basis upon which Sergeant Krause predicated his conclusion that the latent prints found at the scene of the crime were those known to belong to the appellants. It was not the State, but the appellant Stanley who produced the testimony showing that the fingerprint cards contained a notation that he, Stanley, had been charged with criminal offenses. Appellant Stanley introduced this testimony at a time when it was questionable whether the State would offer the cards in evidence, and despite the fact that the court had previously indicated that it did not view the mere existence of a fingerprint card as meaning that the subject of the card had a criminal record. Indeed, it was appellant Stanley's position, on the one hand, that the cards must be placed in evidence if Sergeant Krause was to make any reference to them, and, on the other hand, Stanley contended that the cards were inadmissible since they contained prejudicial information indicating a prior criminal record. Under these circumstances, the State's subsequent introduction of appellant Stanley's fingerprint card of March 20, 1966 was less than anticlimactic and we do not think that its admission could be deemed prejudicial. Even if the card was inadmissible, the fact that the appellant himself produced the evidence which he

now claims was prejudicial would, in no event, constitute reversible error. See *Jones v. State*, 205 Md. 528.

Since fingerprinting is used in numerous branches of business and civil and military service, we make the observation that the fact of fingerprinting cannot, of itself, be deemed a badge of crime or connote the existence of a criminal record, nor would the introduction of such evidence for the limited purpose of comparison with latent fingerprints of an accused found at a crime scene *per se* constitute prejudice or deny the accused his constitutional right to a fair trial. See *United States v. Kelly*, 55 F. 2d 67 (2nd Cir.) ; *State v. Riley*, 154 N. W. 2d 741 (Neb.) ; *Lester v. State*, 416 P. 2d 52 (Okla. Cr.) ; *Bridges v. State*, 19 N. W. 2d 529 (Wis.). It has been held that where such a fingerprint record contains extraneous matter which is itself incompetent and prejudicial, the introduction thereof in evidence may or may not constitute reversible error, depending on such factors as whether the material was or was not seen by the trier of fact or whether the objection thereto, if made, was waived by the defendant. See Annot., 28 A. L. R. 2d 2115, at 1135-1136. Thus, in *Lester v. State, supra,* it was held that the admission of an accused's fingerprint records for comparison purposes was not error where the record was so covered up that the extraneous material (that it was a police department record) was not seen by the jury. To like effect, see *Sibley v. United States*, 344 F. 2d 103 (5th Cir.) ; *Moon v. State,* 198 P. 288 (Ariz.) ; *State v. Viola*, 82 N. E. 2d 306 (Ohio).

In *Riley,* the question before the court was whether a mistrial should have been granted because of the admission, over objection, of certain police department fingerprint records of the defendants which had been taken prior to the commission of the crime for which they were on trial. There, as here, the objection to such evidence was on the basis that the introduction of the fingerprint cards tended to show prior criminal activity on the part of the defendants. The court held at page 743 that, at most, the records inferred "that the defendants had some prior contact with the police," and that there was "no legal inference of the commission of another crime or being charged with another crime from the fact that a police identification

department has on record the fingerprints of a person." In concluding that the introduction of the fingerprint cards was not prejudicial to the defendants, the court, quoting from *Bridges v. State, supra,* stated: (pp. 743-744)

"In this age and particularly in these times it is a matter of common knowledge that it has become customary and considered proper in private business and industry, as well as in public service and institutions, to take photographs and fingerprints of individuals, who are connected therewith or engaged or detained therein, for their identification for many other purposes or respects than in criminal matters. It is commonly known that such photographing and finger printing is a matter of daily practice and the usual method of identification used in the police service in populous communities of persons arrested,—but not yet convicted,—for violations. The use of that practice and method is considered to be for the common good and the rights of police authorities to resort thereto has been recognized in most jurisdictions, and such use thereof is, in itself, not considered a badge of crime."

While we do not think it essential to the State's case that such a fingerprint record be actually introduced into evidence (see *Couser v. State,* 4 Md. App. 543), where, as here, the fingerprint card was not introduced until after the accused himself produced the testimony showing the notation on such card of the allegedly prejudicial matter (the prior criminal charges), we think, as heretofore stated, that the card's admission under such circumstances would in no event constitute reversible error. In so concluding, we are mindful of the fact that the trial judge in this non-jury case advised the appellant Stanley that in his opinion the mere existence of a fingerprint record of an accused did not mean that such person had a prior criminal record. In any event, we do not assume that bias, prejudice or improper influence prejudiced the defendant; the burden is on him to show that such fact existed. *Halstead v. State,* 4 Md. App. 121. We do not think that appellant Stanley has

met this burden, nor do we find the cases relied upon by him [2] apposite under the facts of this case.

## II

Appellants' contention that the evidence was insufficient to support their convictions is grounded on the premise that evidence of their fingerprints found at the scene of the crime, standing alone, is not legally sufficient evidence upon which to base a conviction in the absence of a showing by the State that the prints could only have been impressed at the time the offense was committed.

It has been generally recognized that where, as here, the only evidence of guilt of accused persons consists of their fingerprints found at the scene of the crime, the evidence, to be legally sufficient to sustain a conviction, must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the prints were impressed at a time other than that of the crime. *McNeil v. State,* 227 Md. 298; *Fladung v. State,* 4 Md. App. 664. Such "other circumstances" need not be those completely independent of the fingerprint and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed. See *Lawless v. State,* 3 Md. App. 652. In that case, we said at p. 659:

> "* * * A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent. While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court

2. *People v. Van Cleave,* 280 P. 983 (Calif.); *United States v. Dressler,* 112 F. 2d 972 (7th Cir.).

cannot supply evidence that is lacking. *United States v. Hayes,* 385 F. 2d 375 (4th Cir. 1967). We also feel that the rule in *McNeil* does not compel the State to negative every conceivable possibility that an accused, shown to be at the scene of a crime by his fingerprint, was present other than at the time of the commission of the crime. The fingerprint evidence, as we construe it, need be coupled only 'with evidence of other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime' (emphasis added). The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed."

On the record before us, we are persuaded that the judgment of the lower court sitting without a jury was not clearly erroneous (see Maryland Rule 1086), as the evidence of the attendant circumstances with respect to the finding of appellants' fingerprints on the broken glass was such that the trial judge could properly conclude that they were present at the time the crime was committed and that they were, in fact, the criminal agents.

The evidence was clear that the crime was committed within a seven hour span in the early morning hours of June 10, 1967. That entry had been effected through the outer door from which glass had been removed was likewise clear. It would be beyond reason, in the absence of evidence to the contrary, to assume that anyone other than the burglars had neatly stacked the glass fragments from the broken panel. The fingerprints on the glass fragments found at the outer door appeared on both sides of the glass in such a manner as to compel the conclusion that they were imprinted at the time the glass was removed from the door. And the evidence showed that the prints were less than a day old. Under these circumstances, and bearing in mind that appellant Stanley's prints were also found on the glass cut out from the window of the interior office—the only rational conclusion being that it was the burglars who re-

moved the glass from both the outer door and inner office window—we conclude that the evidence was legally sufficient to support the convictions of each appellant.[3]

*Judgments affirmed.*

---

**3.** In *Musgrove v. State,* 3 Md. App. 54, we said at p. 56 that it was "a sound principle of law that proof of fingerprints corresponding to those of the accused, found in the place where a crime was committed, under such circumstances that they could *only* have been impressed at the time the crime was committed may be sufficient proof of identity to sustain a conviction." Appellants seize on our use of the term "only" in *Musgrove* and contend that unless the prints could only have been impressed at the time the crime was committed, the evidence is insufficient to convict. Our recitation of the rule in *Musgrove* was not intended to, nor did it, establish a different standard of legal sufficiency of fingerprint evidence to support a conviction than that set forth by the Court of Appeals in *McNeil v. State, supra.* See *Lawless v. State, supra.* For cases in which we found fingerprint evidence sufficient to support a conviction, see *Fladung v. State, supra; Couser v. State, supra; McGhee v. State,* 4 Md. App. 256; *McCargo v. State,* 3 Md. App. 646; *Hannah v. State,* 3 Md. App. 325. For cases in which we found such evidence insufficient to convict, see *Gray v. State,* 4 Md. App. 155; *Mills v. State,* 3 Md. App. 693, and *Musgrove v. State, supra.*