## No. 27160

## The People of the State of Colorado v. Maxie Martinez

(553 P.2d 774)

Decided August 23, 1976.

Robert R. Gallagher, Jr., District Attorney, James C. Sell, Deputy, for plaintiff-appellant.

Myers, Woodford & Hoppin, Frederick J. Myers, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Martinez was charged with first-degree assault as defined in section 18-3-202(1)(a), C.R.S. 1973. He pled not guilty and the matter was tried to a jury. After the close of the People's evidence, the defendant made a motion for judgment of acquittal which was granted by the trial court.

The People appeal and assert that the trial court erred in granting the motion for judgment of acquittal because the People had presented substantial evidence which would have supported a jury verdict of guilty. We agree with this assertion and hold that the trial court clearly usurped the jury's function in this case. Because a retrial would violate the rule against double jeopardy, we can, in this case, only register our disapproval of the trial court's judgment of acquittal.

Mr. George Van Vleet drove to a large shopping center to pick up his fifteen-year-old son Robert who was employed at the shopping center. Prior to being picked up by his father, Robert had been joined by two of his friends. He testified that prior to the time his father picked him and his two friends up, they had encountered the defendant and three other young men in the mall of the shopping center. Robert related in his testimony that one of the four young men had asked if he had any beer or marijuana. When a negative response was made, this encounter ended.

Shortly after Mr. Van Vleet picked up Robert and his two friends, and as they proceeded out of the shopping center, some object hit the car.

Mr. Van Vleet immediately stopped the car and got out in order to investigate possible damage. Mr. Van Vleet testified that as he walked to the front of his car, he observed the defendant coming toward the automobile with a mace in his hand. He described this object as a metal ball with spikes and a chain. Robert and his two friends then also got out of the car. Mr. Van Vleet observed the defendant swinging the mace at his son Robert, saw the mace strike his son's head, and saw his son collapse beside the car. He also testified that he observed a belt and club being swung by two of the other individuals who were with the defendant. Robert was assisted into the automobile by one of his friends. Mr. Van Vleet then drove immediately to a nearby police station to report this incident and to secure assistance for his injured son, Robert, who was thereafter taken to a hospital.

A neurosurgeon testified that he examined Robert's head injuries at the hospital. His examination revealed a puncture wound behind the left ear and other lacerations on the head. This doctor testified that the puncture wound had penetrated the skull, exposed the brain, and that immediate surgery was required. He performed the surgery which revealed that particles of bone and hair had been driven into the brain. During the surgery, the bone fragments and hair were removed, and in addition, brain tissue was removed which, in the surgeon's opinion, was devitalized by the nature of the injury. This witness also stated that, in his opinion, the skull was fractured and penetrated by a sharp pointed object.

The foregoing evidence presented by the prosecution established all the elements of first-degree assault. The trial judge conceded this in the following statement he made just prior to ordering the entry of the judgment of acquittal:

"Now, I don't understand and probably never will understand why the prosecution in this case chose to call adverse witnesses to give an entirely different version of what happened out there than those presented by the Van Vleets.

"In my humble opinion, I think had the case terminated at the end of their evidence, there would have been no question in this Court's mind that that would have been the necessary quantum and quality of evidence to establish the necessary elements to show assault in the first degree."

The "adverse witnesses" mentioned in the foregoing statement of the trial judge were two of the three young men who were with the defendant at the time of the alleged assault. One of them was, in fact, the defendant's brother. The prosecution called these witnesses who testified, in effect, that the father of the victim and one of the victim's friends made aggressive moves toward them and they, therefore, felt that they had to act in self-defense. They also testified that they did not see any weapon in the hands of the defendant at the time of the incident. One of these witnesses, however, conceded that he had shortly before seen a mace in the

defendant's car. These witnesses also testified, as did several of the other prosecution witnesses, that one of the defendant's companions had a club in his hand and that one or possibly two of the others were swinging a belt or something else. There was also testimony to the effect that the victim was hit by a club by one of the defendant's companions. It is to be noted that there was no testimony from any witness that the victim made any aggressive move towards the defendant or any of his companions. Also, the evidence presented by the prosecution consistently showed that the victim, his father, and his two friends possessed no weapons of any kind.

The trial judge expressed the view that the prosecution had, by using the so-called "adverse witnesses," injected an irreconcilable conflict in the prosecution's case by tendering "at least two, if not three, different versions of what happened on the day in question." On this premise, the trial judge reasoned and held that since these irreconcilable conflicts existed "the reasonable jurors must of necessity have a reasonable doubt and therefore the court feels that judgment of acquittal must be granted and it will be granted."

The rationale utilized by this judge in taking this case away from the jury and granting to this defendant a judgment of acquittal is wholly invalid and contrary to well known and generally established principles of law.

■ When viewed as a whole and in a light most favorable to the prosecution, competent, credible and substantial evidence, as there was here, which establishes each element of a crime and would support a conclusion that the defendant is guilty beyond a reasonable doubt, is not vulnerable to a motion for judgment of acquittal at a jury trial. This proposition of law is firmly established in our law and is well expressed in *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

■ It is a generally established rule that upon a motion for a judgment of acquittal at a jury trial, the trial judge in viewing the evidence in a light most favorable to the prosecution, must give the prosecution the benefit of every reasonable inference which may fairly be drawn from the evidence. When the prosecution presents evidence of certain acts from which a jury may properly infer the necessary elements of a crime, the prosecution has made a prima facie case which is impregnable against a motion for a judgment of acquittal. *Ruark v. People*, 164 Colo. 257, 434 P.2d 124 (1967).

■ In describing the jury function in *People v. Jones*, 191 Colo. 110, 551 P.2d 706 (1976), we reiterated the well known rule that contradictions, discrepancies, and inconsistencies in the testimony of the prosecution's witnesses are to be resolved by the jury. *See also People v. Jiminez*, 187 Colo. 97, 528 P.2d 913 (1974).

■ In passing upon a motion for a judgment of acquittal, the trial judge should not attempt to serve as a thirteenth juror or invade the

province of the jury in determining the credibility of witnesses and the weight to be given to the various segments of the evidence. *People v. Cushon*, 189 Colo. 230, 539 P.2d 1246 (1975), and *People v. Bennett, supra.*

We note that the trial judge in statements to counsel during the consideration of the motion for judgment of acquittal appeared to be concerned about the self-defense indication which the prosecution had injected into its case by the testimony of the so-called "adverse witnesses." It is apparent that this concern was an influencing factor in the trial judge's acquittal of the defendant. There is no basis either in fact or law for this to be a determinative factor. First of all, the two "adverse witnesses" merely asserted self-defense as justification of their own conduct. They did not testify that the defendant was acting in self-defense. There was absolutely no testimony that the victim made any aggressive moves against the defendant or his companions or that the defendant may have been acting in self-defense. Secondly, even if there was some evidence that the defendant may have been acting in self-defense, it was for the jury, and not the judge, to determine this factor from all the evidence presented.

■ In granting the motion for judgment of acquittal, the trial judge erred. This error cannot be rectified by a reversal and a remand for a new trial because the defendant has now been placed in jeopardy and may not be tried again for this offense. This trial court error is inexcusable because the evidence presented by the prosecution was of such a nature as to clearly withstand any motion for a judgment of acquittal. The judge's action here was contrary to the well known and established rules of law which are set forth herein and which must be carefully applied when a motion for a judgment of acquittal is made at a jury trial.

Judgment disapproved.

MR. JUSTICE LEE does not participate.