## No. 27261

### The People of the State of Colorado v. Jerome Joseph Downer

(557 P.2d 835)

Decided December 20, 1976.

Nolan L. Brown, District Attorney, Joseph Mackey, Deputy, for plaintiff-appellant.

No appearance for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

The district attorney brings this appeal solely on questions of law pursuant to section 16-12-102, C.R.S. 1973. Defendant Downer was charged with the crimes of second-degree murder and first-degree arson. He pled not guilty and was tried before a jury. During the trial, the court suppressed certain statements made by the defendant immediately following the fire and later before a grand jury. At the close of the People's evidence, the defendant made a motion for judgment of acquittal which was granted by the trial court. The People appeal both the judgment of acquittal and the suppression rulings. Because the constitutional provision against double jeopardy prevents the retrial of the defendant on these charges, we can only register our disapproval of the trial court's judgment of acquittal and its suppression orders.

I.

The People assert that the trial court erred in granting the defendant's motion for judgment of acquittal because the People had presented substantial evidence which would have supported a jury verdict of guilty. We agree.

The charges against the defendant arose out of the following circumstances as established by the People's evidence considered in its most favorable light. At approximately four o'clock one Tuesday morning, a fire occurred in the Downer residence in Evergreen, Colorado. The house was already engulfed in flames by the time the firemen arrived in response to defendant's report. Several of the firemen who testified expressed surprise that the fire could have reached the proportions it did, given the short response time of the fire department after the fire was reported.

The firemen were met at the scene by the defendant. The firemen noticed that his boots were laced and his hair combed — factors which the firemen later testified were unusual in house fires that occur during the middle of the night. When one of the firemen asked the defendant if anyone was in the house, the defendant responded that he "had got the kids out"; when further questioned, the defendant stated that he had found his wife's purse, but that he "hadn't seen her all day" and that she might be

"downstairs." Shortly after, the defendant told other firemen that if his wife were in the house, she would be in a certain upstairs bedroom. As a consequence, the firmen directed their efforts at rescuing Mrs. Downer from the upstairs bedroom, but they were unable to find her there.

After the fire was extinguished, the firemen found the badly burned body of Mrs. Downer in the basement of the house. Her body was under a large workbench which was tipped over on its side and which rested over the lower half of her body.

An arson investigator testified at the trial that there were two separate fires in the house. One of the fires had its origin on or near the body of Mrs. Downer, and the other started on the stairs leading from the basement. The arson expert ruled out the possibility of an electrical fire. In his opinion, the fires were started by the use of a flammable accelerant because of the manner in which the fires started and in which they burned. The expert also believed that the fire near Mrs. Downer's body started after the table had come to rest over her because of the way the table was burned. He then testified that although several cans of flammable liquid were on the workbench and under the stairs, none of these cans had ruptured. He further theorized that the fire on the workbench could not have started from a spilled container of flammable liquid because of the location and nature of the fire burns on the surrounding floor.

A chemist confirmed that volatile hydrocarbons were found in the clothing of Mrs. Downer. Though no such flammable liquids were found in the stairwell, the arson expert explained that they could have either burned or evaporated by the time the test sample was taken.

The pathologist testified that Mrs. Downer died before the fire started because of the negligible amount of carbon monoxide in her blood and the lack of any appreciable amount of soot or smoke in her lungs. He also stated that there were deep lacerations and bruises on her head, which he conjectured could have been caused by blows from a fist and a board when she was still alive. He also testified that there were drops of blood (later confirmed by a chemist) on one of Mrs. Downer's slippers, which would indicate that Mrs. Downer received the blows to her head while in an upright position. Another chemist testified that there were no drugs or alcohol found in Mrs. Downer's blood.

Several days after the fire, the defendant told the sheriff's office his version of what occurred on the night of the fire. These statements were admitted into evidence through the testimony of the deputy sheriff. Defendant stated that, on the Sunday night before the fire, his wife left the house, at which time he agreed to take care of the children the next day. On the following day, he removed one of the children from a bedroom in which he believed his wife was asleep. He and his wife had been sleeping in separate bedrooms. He then took the children shopping and to see a movie. On returning to the house later that afternoon, he noticed that

their other vehicle was in the driveway, and he assumed that his wife was at home but asleep, after having been out the night before. He answered some phone calls for his wife, but he told the callers she was asleep somewhere in the house. He then fed the children and they went to bed. During the night, he said that he was awakened by the dog's barking and he smelled smoke. He therefore dressed and took the children out to the car; one of the children he removed from the room where Mrs. Downer usually slept. He made several trips into the house to obtain clothing for the children. At one point, he opened the basement door but was met by smoke and sparks. He attempted to use the phone but it did not work. He drove the car to a nearby payphone, even though some neighbors' houses were nearby. The payphone, however, was no longer there. He therefore went back to the house and successfully used his phone to call the fire department. At this time, he noticed his wife's purse in the house. The defendant then attempted to put out the fires in the basement by shooting water from a hose through a basement window that he had broken out; eventually, however, the water pump became inoperative. He stated that he received two burns on his arm when he reached into the house to turn on the outside lights when the firemen arrived.

The prosecution called several witnesses who testified that the defendant and his wife were having marital problems; that Mrs. Downer was seeing other men; and that the Downers were on the verge of getting a divorce. One of the witnesses testified that the decedent had told her shortly before the fire that she was afraid to discuss a divorce with the defendant because she feared that he would physically harm her.

After this evidence was presented, the trial court granted the defendant's motion for judgment of acquittal. Although the judge agreed that the evidence showed Mrs. Downer may have "met her death due to a criminal agency," he, nonetheless, concluded that the evidence failed to link the defendant with the possible arson or murder and that it would be sheer speculation for the jury to conclude otherwise.

 We believe, however, that the quality and quantity of the evidence was sufficient to withstand a motion for judgment of acquittal. When such a motion is before the judge, the issue is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Martinez*, 191 Colo. 428, 553 P.2d 774 (1976); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). Only when the evidence is such that the jury must necessarily have a reasonable doubt should the judge direct a verdict in favor of the defendant. The trial court must give the prosecution the benefit of every reasonable inference which might fairly be drawn from the evidence. Finally, the trial court should not attempt to serve as a thirteenth juror or

invade the province of the jury in determining the credibility of the witnesses and the weight to be given to various segments of the evidence. *People v. Martinez, supra.*

■ The evidence in this case, although circumstantial and sometimes inconsistent, was sufficient to permit the jury to decide whether the defendant committed the crimes charged. There was substantial evidence that the house was set on fire and that Mrs. Downer may have been killed prior to the fire. According to the evidence, the defendant was the only adult present at the house in the early morning when the fires took place. He was fully dressed and his clothes were clean, despite the fire. His arm may have been scratched, as indicated by the police officer, rather than burned. There was evidence from which the jury could have inferred that defendant deliberately ventilated the fire and delayed reporting it. Defendant's comments to the firemen could have been interpreted as unduly obfuscatory and dilatory. There was testimony that the marriage between the Downers had been rapidly deteriorating just prior to the fire, and that Mrs. Downer feared physical harm from the defendant. From these facts and the reasonable inferences therefrom, the jury could have concluded that the defendant had the means, motive and opportunity to commit the crimes charged.

We reiterate that the determination of defendant's guilt or innocence should have been left to the jury and that the trial court acted improperly in granting the defendant's motion for judgment of acquittal.

## II.

■ The People also appeal from a suppression order of the trial court made during the course of the trial. The court suppressed certain statements made by the defendant to a sheriff's officer a few hours after the fire. The People attempted to offer these statements to show inconsistencies with the defendant's later versions of the events surrounding the fire.

At the *in camera* suppression hearing, a sheriff's officer testified that it was routine to take statements from witnesses concerning all unattended deaths. As a result, he requested defendant to go to the police station, either on his own or with the police, to give them his statements concerning the fire. The officer testified, and it was undisputed, that the reason for going to the station was merely for convenience, as there was too much confusion at the scene to take a statement. The officer also stated that at that time there was no suspicion that arson or murder was involved in the fire, and in fact, the firemen then thought that the fire was caused by a faulty pump.

The court ruled the statements inadmissible because no *Miranda* warnings were given to the defendant. It ruled in essence that because the statements were given at the police station in front of a reporter, the statements were given by the defendant under custodial interrogation.

The fact that the statements were taken in the police station is not dispositive of whether defendant was in custody. The defendant voluntarily agreed to appear at the station as a matter of convenience. *See People v. Algien*, 180 Colo. 1, 501 P.2d 468 (1972), and *People v. Garrison*, 176 Colo. 516, 491 P.2d 971 (1971). Moreover, the officer's statements that he had no suspicions that defendant was criminally responsible for the fire, or that arson was even involved, was unrefuted, except for the testimony of one fireman that Mrs. Downer's aunt had told him over the phone that she suspected foul play. The fireman could not even remember to which sheriff's officer he conveyed this information. In any event, the phone call could have provided only the vaguest suspicion as to defendant's criminal involvement at that time.

Consequently, there is no evidence to support the trial court's finding that defendant's statements made immediately following the fire were given during a custodial interrogation. Suspicion had not yet focused on the defendant. The statements were volunteered by the defendant during the course of a general routine investigation and there was no need for *Miranda* warnings to be given him. *See People v. Thornton*, 190 Colo. 397, 547 P.2d 1278 (1976).

### III.

The trial court also suppressed statements made by the defendant at a grand jury inquest into the fire. The court ruled that such statements could not be used as substantive evidence by the prosecution, primarily because defendant did not have the benefit of his counsel's cross-examination at the proceedings.

Defendant stipulated at the *in camera* suppression hearing that he volunteered to appear before the grand jury; that he had been advised of his rights not to testify; and that he had been warned that he was a suspect in the grand jury investigation.

We hold that the trial court erred when it suppressed these statements before the grand jury as substantive evidence. In *People v. Austin*, 159 Colo. 445, 412 P.2d 425 (1966), we ruled that a defendant was not deprived of his right against self-incrimination when he voluntarily appeared before a grand jury, was given a full advisement of his rights, and told that he was the subject of its investigation; we accordingly refused to quash an indictment against the defendant which resulted from his testimony. We now hold that, at least where a defendant, with the advice of counsel, volunteers to testify before a grand jury and is thoroughly advised of his rights, his testimony, like other prior statements by him, can be admitted as substantive evidence at his subsequent trial. *See e.g., United States v. Grunewald*, 164 F. Supp. 644 (S.D.N.Y. 1958), and *State v. Griffin*, 242 Ore. 284, 409 P.2d 326 (1965). *See also* Annot. 5 A.L.R. 2d 1404, and 8 *J. Wigmore, Evidence* § 2363 (3d Ed.) and cases cited therein. Once a person waives his right not to testify against himself,

his privilege as to the use of that testimony is ordinarily waived for subsequent proceedings.

The fact that defendant's counsel was not present with him at the grand jury does not bar the use of his testimony. Under settled principles of constitutional law, a grand jury witness may not insist upon the presence of his attorney in the grand jury room as no criminal proceedings have as yet been instituted against him. *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Furthermore, because it is the defendant himself who makes the statements, the evidentiary problems of hearsay and the constitutional problems involving the right to confrontation are not presented, as in the case of prior testimony of other witnesses. *Compare, e.g., Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Judgment disapproved.

MR. JUSTICE ERICKSON does not participate.