The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Larry D. RAY, Defendant-Appellee.

No. 79SA347.

Supreme Court of Colorado,
En Banc.

April 6, 1981.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for plaintiff-appellant.

LOHR, Justice.

This is an appeal by the People from a judgment of acquittal granted by the trial court after a jury had been unable to reach a verdict on a second-degree burglary[1] charge against the defendant, Larry D. Ray. In addition to asserting error in granting the judgment of acquittal, the People challenged the trial court's ruling denying the People's offer of evidence of two allegedly similar transactions. We approve the entry of the judgment of acquittal but disapprove the exclusion of the evidence concerning similar transactions.

On October 26, 1978, during the mid-day absence of Mr. and Mrs. Frank W. Winegar from their Denver residence, someone entered their locked house and stole a number of items of silver and jewelry as well as a down comforter, a bedspread[2] and a fur stole. Much of the jewelry was antique and specially designed. No television or other electronic equipment was taken.

Mrs. Winegar discovered the loss when she returned home late that afternoon. She notified the police, who quickly arrived on the scene. Inspection of the premises by the police and Mrs. Winegar disclosed that a milk chute in the back of the house had been broken open and appeared to be the opening through which the burglar had entered the dwelling. The milk chute was approximately 20 inches wide and 14 to 16 inches high. It had two steel doors, one on the outside of the house and the other on the inside, with a space the width of the outside wall between them. Only a latch was maintained on the outer door, but the inner door had been secured by a bar lock, which had been forcibly torn loose from its fastenings.

Police officers obtained five latent fingerprints from the outside surface of the inside milk chute door, and did not attempt to search for additional prints inside the house. One of the latent fingerprints was positively identified at trial as that of the defendant. The poor quality of the other prints prevented identification. No other evidence was presented by the People linking the defendant to the crime. The defendant was not known to the victims and had no permission to enter their home.

Prior to the presentation of any evidence by the People, the defendant moved to suppress evidence of two similar transactions which he understood the People intended to offer. The People made a record with respect to the nature of the evidence and the purposes for which its admission was re-

---

1. Section 18-4-203, C.R.S. 1973 (1978 Repl. Vol. 8).

2. In argument the deputy district attorney speculated that the comforter and bedspread were used to carry the other items.

quested. The trial court reserved ruling pending presentation of other evidence in the People's case. After presenting the other evidence, the People moved to admit the evidence of the two similar transactions for the stated purposes of proving the identity of the perpetrator of the Winegar burglary as well as to show a common scheme, method of operating, and intent.

In her offer of proof, the deputy district attorney described the first incident as having occurred on October 31, 1978, at a residence three to four blocks from the Winegar home. Entry was obtained between 8:30 a. m. and 2:00 p. m. by prying open the back door of the house. Silver and expensive jewelry, including antique items, had been taken, but the stereo, television and cameras were left. A missing pillow slip and a sack, the contents of which had been emptied, may have been used to carry the items. Fingerprints were found on a box in which the silver was kept and, although the offer of proof is not specific, it may be inferred that expert testimony would show the prints to be the defendant's.

The second incident was described in the offer of proof as having taken place on November 3, 1978, at a house within three to four blocks of the other two burglarized residences. There, a woman returned to her home during the day and interrupted a burglary in progress. As she entered her bedroom she saw the defendant leaving through the window. A bag in the kitchen had been emptied and was missing. Jewelry, some of it antique, had been taken, but the stereo and television equipment had not. A broken window in the back bedroom appeared to have been the means of entry. The woman later identified the defendant as the burglar in a photographic lineup.

The trial court concluded that the decision whether to permit the evidence of the other transactions was discretionary and that the question was close. The trial court then stated that it was Thursday afternoon, the second week of the jury panel's service, and that the following Monday would be a holiday; that the second incident was the subject of a charge which had been severed from the charge for which the defendant was on trial; that a *Wade*[3] hearing would be necessary with respect to the identification of the defendant; that the courtroom was hot;[4] and that both other incidents were the subjects of charges pending in other divisions of that court. The court then stated:

"[T]o prolong this trial over a long weekend in the middle of the summer with a jury that, it's the Court's impression, is trying very hard to be attentive and having some difficulty with that in terms of the heat of the courtroom, that to prolong this trial would only confuse the issues for both sides and that neither side would necessarily receive as fair a trial as they could if we tried this incident only and left the similars for another time and another place."

After the People rested, the defendant moved for a judgment of acquittal. The motion was denied. The defendant rested without presenting evidence and then renewed his motion for a judgment of acquittal. The trial court reserved ruling on that motion.

The jury deliberations over the course of almost two days, with a three-day weekend interruption, did not produce a verdict, and the trial court declared a mistrial when the jury reported that it was deadlocked. The trial court then granted the defendant's motion for judgment of acquittal on which ruling had previously been reserved.

 The People contend that the trial court erred in granting the defendant's mo-

---

3. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966). *Wade* and its progeny require an in camera hearing on the admissibility of pre-trial identifications alleged to have been obtained by unduly suggestive procedures or in violation of the defendant's right to counsel.

4. The record is replete with complaints about the excessive heat in the courtroom by various participants during the course of this mid-summer trial. At the beginning of the trial, the court had denied the defendant's motion that, because of the heat, the trial should be continued.

tion for judgment of acquittal and in refusing to permit presentation of evidence of the two similar transactions. They ask that the judgment of acquittal be set aside and that a new trial be ordered. Jeopardy has attached, however, and retrial of the defendant is barred. *E.g., People v. Waggoner*, 196 Colo. 578, 595 P.2d 217 (1979). We treat this matter, therefore, as an appeal pursuant to section 16–12–102, C.R.S. 1973 (1978 Repl.Vol. 8), in which we may only approve or disapprove the trial court's rulings. The defendant has not participated in the appellate proceedings in this court.

## I.

■ The standard by which a motion for judgment of acquittal is to be tested is well settled. In *People v. Downer*, 192 Colo. 264, 268, 557 P.2d 835, 838 (1976) we said:

"When such a motion [for judgment of acquittal] is before the judge, the issue is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. [Citations omitted.] Only when the evidence is such that the jury must necessarily have a reasonable doubt should the judge direct a verdict in favor of the defendant. The trial court must give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence. Finally, the trial court should not attempt to serve as a thirteenth juror or invade the province of the jury in determining the credibility of the witnesses and the weight to be given to various segments of the evidence."

*Accord, e.g., People v. Roberts*, 197 Colo. 304, 592 P.2d 801 (1979); *People v. Martinez*, 191 Colo. 428, 553 P.2d 774 (1976); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

We have also previously considered the applicability of that general test to situations where a defendant is tied to a crime by fingerprint evidence only. In such a case we have said:

"Fingerprints warrant a conviction when the fingerprints clearly and unequivocally establish that an accused committed the crime. To satisfy the requirements of proof in a circumstantial case, the fingerprints which correspond to those of the accused must be found in the place where the crime was committed under such circumstances as to rule out the possibility that they could have been impressed at a time other than the time that the crime was committed. *Silva v. People*, 170 Colo. 152, 459 P.2d 285 (1969); *accord, State v. Tew*, 234 N.C. 612, 68 S.E.2d 291 (1951). *See also*, 28 A.L.R.2d 1149–1157."

*Hervey v. People*, 178 Colo. 38, 42, 495 P.2d 204, 206 (1972);[5] *see also, People v. Gomez*, 189 Colo. 91, 537 P.2d 297 (1975); *People v. Hannaman*, 181 Colo. 82, 507 P.2d 466 (1973).

This test has been elaborated in *Edmonds v. State*, 5 Md.App. 132, 141, 245 A.2d 618, 623 (1968) as follows:

"It has been generally recognized that where, as here, the only evidence of guilt of accused persons consists of their fingerprints found at the scene of the crime, the evidence, to be legally sufficient to sustain a conviction, must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the prints were impressed at a time other than that of the crime. [Citations omitted.] Such "other circumstances" need not be those completely independent of the fingerprint and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public

---

**5.** *Hervey v. People, supra,* preceded our decision in *People v. Bennett, supra,* in which we adopted the substantial evidence test set forth in the quotation from *People v. Downer, supra.* In *People v. Bennett* we "cast aside as outmoded and as confusing the requirement that the prosecution's evidence, when wholly circumstantial, must exclude every reasonable hypothesis other than that of guilt ..." 183 Colo. at 131, 515 P.2d at 469.

to the object on which the print was impressed."

In this case, the evidence establishes that the defendant touched the outer surface of the inside door of the milk chute at the Winegar residence. No innocent purpose has been suggested which would be consistent with that activity. There was no evidence, however, as to the time that the fingerprint was left on the door. *Compare People v. Gomez, supra.* No evidence placed the defendant inside the Winegar residence on the day of the burglary or at any other time. *Compare People v. Hannaman, supra*, in which we emphasized that the defendant's fingerprints were found *inside* the building where the crime was committed. Because the inside of the milk chute was readily accessible to anyone in the Winegars' backyard, the fingerprint could have been impressed at a time other than the time when the crime was committed.[6] *See Hervey v. People, supra; see also Solis v. People*, 175 Colo. 127, 485 P.2d 903 (1971). The fingerprint was the only evidence tending to tie the defendant to the crime. We conclude that this evidence, when viewed as a whole and in the light most favorable to the prosecution, is not substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the burglary *beyond a reasonable doubt. See People v. Downer, supra; People v. Bennett, supra.* Thus, the trial court was correct in granting the defendant's motion for a judgment of acquittal.

## II.

The People also contend that the trial court erred in refusing to admit evidence of two similar transactions. The People's offer of proof described two unlawful entries and thefts similar to the crime charged here. The two transactions occurred during the daytime in residences located within four blocks of the Winegar home. In addition they took place within eight days sub-sequent to the burglary in question. The People offered to tie the defendant to one of these subsequent acts by fingerprints and to the other by eyewitness identification.

■ Evidence of other crimes, wrongs, or acts is inadmissible to prove that the accused has a propensity to commit the crime which is charged. *People v. Gutierrez*, Colo., 622 P.2d 547 (1981); *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); C.R.E. 404(b). However, such evidence may be admissible if offered for another purpose. In *People v. Honey, supra*, we set out three criteria which must be satisfied before evidence of other criminal transactions may be admitted. First, there must be a valid purpose for which the evidence is offered. Second, the evidence must be relevant to a material issue in the case. Finally, the probative value of the evidence, considering the other evidence which is relevant to the issue, must outweigh the prejudice to the defendant which would result from its admission.

■ The People contend that the evidence of the two burglaries is relevant to show a plan, scheme or design common to those crimes and the crime charged here. *See, e.g., People v. Martinez*, 190 Colo. 507, 549 P.2d 758 (1976); *People v. Moen*, 186 Colo. 196, 526 P.2d 654 (1974). This exception to the general rule barring evidence of other criminal acts "applies when the evidence shows a larger continuing plan to engage in certain criminal activity, and it especially applies in cases where motive, identity of the actor, and intent are in dispute." *People v. Ihme*, 187 Colo. 48, 50–51, 528 P.2d 380, 381 (1974). *See generally C. McCormick, Evidence* § 190 (2d Ed. 1972). In assessing evidence of similar transactions offered for this purpose the trial court should determine whether the "transactions are so connected in point of time with the offense under trial and so similar in character that a plan or scheme can be imputed to all of them." *People v.*

---

6. For example, the fingerprint is consistent with an unsuccessful attempt by the defendant to accomplish an unauthorized entry.

*Moen, supra,* at 200, 526 P.2d at 656. In this case the two subsequent burglaries were both temporally and geographically close to the Winegar burglary. All three crimes were committed in the daytime and similar items were taken. These facts tend to establish that all three burglaries were committed as part of a continuing plan. Since the People offered to establish that the defendant committed the subsequent burglaries, those transactions were probative of the identity of the person who committed the offense charged here. Because identity is the crucial issue in this case, the first two *Honey* criteria were met.

The remaining criterion established in *People v. Honey, supra,* requires a balancing between the probative value of the evidence, considering the other evidence which is relevant to the issue, and the prejudice to the defendant resulting from its admission. The critical gap in the People's case is the absence of "circumstances tending to reasonably exclude the hypothesis that the prints were impressed at a time other than that of the crime." *Edmonds v. State, supra,* at 141, 245 A.2d at 623. Only the evidence of a plan or scheme common to the three burglaries committed in the neighborhood of the Winegar home ties the defendant to the burglary in question by tending to establish that one person committed all three crimes and by placing the defendant in the area at a time close to the date of the Winegar burglary. Although

the prejudicial effect of these two transactions is undeniable, the critical inquiry is whether it would be outweighed by the probative importance of the evidence in this case. In balancing these considerations, the trial court is allowed substantial discretion. *People v. Ihme, supra.*

It is not clear from the record whether the trial court addressed the factors set out in *People v. Honey, supra,* in making its ruling on this evidence.[7] It is clear, however, that its ruling was influenced by considerations outside that analysis. While understandable, to the extent the ruling was based upon the discomfort and other difficulties for all participants in an extended trial in an overheated courtroom, it was an abuse of discretion and it must be disapproved. Furthermore, we conclude from the record that the most appropriate exercise of the trial court's discretion would have been to permit receipt of the evidence of the two similar burglaries to show a common plan, scheme or design.[8]

We approve the trial court's entry of a judgment of acquittal, but disapprove its ruling denying admission of the evidence of similar transactions.

---

7. *People v. Honey, supra,* was decided June 11, 1979 and was modified on denial at rehearing on July 16, 1979. The case was not argued by counsel at the trial and the trial judge may not have been aware of it when making rulings at this trial in early August of 1979.

8. In the absence of any record of the actual proof concerning the subsequent burglaries we decline to decide whether the admission of this evidence would have rendered improper the granting of the defendant's motion for judgment of acquittal.