The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James BANKS, Defendant–Appellant.

No. 87CA1647.

Colorado Court of Appeals, Div. III.

May 24, 1990.

Rehearing Denied June 21, 1990.

Certiorari Denied Feb. 4, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy J. Ritz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

David F. Vela, State Public Defender, Katherine Campbell, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, James Banks, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of first degree sexual assault. We affirm.

The victim, an apartment house manager, testified that the defendant came to her apartment to inquire about renting a unit. She asked him to return in a few days because she was ill and could not show any apartments at that time. The defendant came back the following week and entered the victim's apartment to fill out a tenant application form. It was then that the sexual assault occurred.

## I.

Defendant first contends that the trial court erred by refusing to conduct a pretrial hearing to determine whether the testimony of the prosecution's expert in forensic serology was scientifically reliable. Defendant further asserts that additional error resulted when the expert's testimony was admitted at trial. We disagree with both contentions.

In *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), the court held that expert testimony, to be admissible, must be based upon "a well-recognized scientific principle or discovery ... [which has] gained general acceptance in the particular field in which it belongs." The *Frye* test has been adopted by the Colorado Supreme Court. *People v. Anderson*, 637 P.2d 354 (Colo.1981) (evidence of polygraph test inadmissible).

*People v. Anderson, supra*, was tried before the adoption of the Colorado Rules of Evidence. Since the adoption of those rules, the Colorado courts have refused to apply that test at least in those circumstances in which the testimony does not relate to "novel scientific devices and processes involving the manipulation of physical evidence." *People v. Hampton*, 746 P.2d 947 (Colo.1987) (involving admissibility of rape trauma syndrome testimony). *See People v. Campbell*, 785 P.2d 153 (Colo.

1989) (testimony as to reliability of eyewitness identifications).

While the Hampton court noted that some commentators have argued that the *Frye* test is "at odds" with Fed.R.Evid. 702, upon which CRE 702 is based, we do not read the court's opinion as a blanket rejection of the *Frye* test in all cases. Indeed, this court has applied the *Frye* test to cases arising after the adoption of the rules. *See E.M.F. v. N.N.*, 717 P.2d 961 (Colo.App.1985). Rather, the *Hampton* exception to *Frye* appears limited to cases in which the testimony at issue is not premised on some sort of physical testing. But *see People v. Campbell, supra.* We shall, therefore, assume, without deciding, that the *Frye* test must still be applied to determine the admissibility of the evidence offered here.

Under *Frye*, if the scientific evidence to be offered is of a type that has been admitted in other cases, a pre-trial *Frye* inquiry is necessary only if the opposing party makes a timely request for such inquiry, supporting such request by reference to authorities that indicate that there may not be general scientific acceptance of the principle employed. *State v. Harris*, 152 Ariz. 150, 730 P.2d 859 (App.1986).

The expert evidence at issue in this case described the results of a semen analysis test known as the "absorption inhibition" method. This type of test is often used to determine the blood type of an assailant from specimens of semen left by him. This is possible because most persons secrete antigens, which are indicative of blood types, into other body fluids, such as semen and saliva. If the testing of a defendant's saliva reveals the presence of antigens with the same characteristics as those detected in the semen samples, then the conclusion may be drawn that defendant possesses the same blood characteristics as the assailant. *See* Annot., *Admissibility in Prosecution for Sex Related Offense of Results of Tests on Semen or Seminal Fluids*, 75 A.L.R. 4th 897 (1990); U.S. Department of Justice, *Sourcebook in Foren-*

sic *Immunology & Biochemistry* § 19 (1983).

Many jurisdictions have recognized that the absorption inhibition test is generally relied upon by the scientific community to establish an individual's blood type and have admitted the results of such testing for this purpose. *See People v. McGee,* 88 Ill.App.3d 447, 43 Ill.Dec. 641, 410 N.E.2d 641 (1980) (absorption inhibition test appears to be a procedure regularly undertaken to determine blood type); *State v. Young,* 668 S.W.2d 263 (Mo.App.1984) (absorption inhibition test is accepted as accurate and reliable by the scientific community); Annot., 74 A.L.R.4th 897, *supra.*

In this case, however, the expert testimony went beyond opining that the assailant and the defendant possessed a common blood type. In addition, the People's expert testified that both the assailant and the defendant also fell within a narrower group known as "weak secretors." It was this evidence which defendant asserted was unreliable.

Rather than conducting an initial *Frye*-type hearing, the trial court here required the People to make an offer of proof with regard to this aspect of the expert's testimony. In doing so, the People referred to the *Sourcebook in Forensic Serology, supra,* which was also the only authority relied upon by defendant to suggest that the expert's testimony was not based upon an accepted scientific principle.

After reviewing the *Sourcebook* and noting that the very procedures challenged by the defense as unreliable were referred to and explained therein, the trial court concluded that the tests were scientifically recognized in the community.

■ In light of the circumstances of this case, we are satisfied that the trial court's reliance on the *Sourcebook* in admitting the evidence was a proper exercise of its discretion. We premise our holding on the fact that the absorption inhibition method has generally been recognized as based upon accepted scientific principles and that the courts have admitted such evidence in criminal cases. Moreover, the *Sourcebook,* which identifies and discusses the existence

of "weak secretors," was accepted as authoritative by defendant. Thus, although the testimony objected to involved a more specialized application of the absorption inhibition test than is generally presented, the *Sourcebook,* having been recognized as authoritative by both sides, served as a sufficient basis for its admission.

We further reject defendant's assertions that the evidence as admitted at trial was unreliable. As noted previously, either saliva, semen, or blood may be tested under the absorption inhibition method to determine a person's secretor status. This test, as well as the ratio used by the expert to classify defendant as a "weak secretor," is described in the *Sourcebook.*

■ Further, the expert testifying in this case was well qualified in the area of forensic serology, and her failure to name specific studies in support of her conclusions did not, as contended by defendant, render her testimony improper as a matter of law. *State v. Stukey,* 242 Kan. 204, 747 P.2d 137 (1987). *See People v. Romero,* 42 Colo. App. 20, 593 P.2d 365 (1978).

Finally, the defense conducted a thorough cross-examination which fully informed the jury as to the alleged inconsistencies in the expert's testimony. We conclude, therefore, that the evidence was properly admitted, and the issues raised by defendant were pertinent only to the weight to be given the evidence. *See State v. Brown,* 64 Or.App. 747, 669 P.2d 1190 (Or.App.1983).

## II.

Defendant next contends that the trial court erred by refusing to instruct the jury in accordance with his tendered theory of the case instruction. We find no error.

The instruction tendered by defendant included a statement that "he was nowhere near the location of the crime at the time of its commission." The trial court refused to include that language in its instruction to the jury because defendant had failed to give any notice of alibi as required by § 16–7–102, C.R.S. (1986 Repl.Vol. 8A) and

Crim.P. 16. Further, the court considered the statement argumentative, rather than instructive.

Relying on *People v. Hampton*, 696 P.2d 765 (Colo.1985), which held that an accused may testify regarding an alibi even though he has failed to give formal notice of such a defense, defendant argues that the statement concerning his whereabouts should have been submitted to the jury because it was supported by evidence of an oral statement he made at the time of his arrest that he was on the 16th Street Mall looking for a friend when the assault occurred. We disagree.

■ Generally, an instruction embodying the defendant's theory of the case must be given if there is any evidence in the record to support it. *People v. Dillon*, 655 P.2d 841 (Colo.1982). A defendant is entitled to such an instruction no matter how improbable or unreasonable his theory may be, but the instruction must be grounded upon the evidence, not upon a " 'mere fanciful invention of counsel nor one involving an impossibility.' " *People v. Marquez*, 692 P.2d 1089 (Colo.1984). A tendered instruction may be refused if it contains a restatement of points covered by other instructions, reiterates a general denial of guilt, or contains argumentative matter. *People v. Martinez*, 652 P.2d 174 (Colo.App.1981).

■ Here, defendant did not seek to have the jury instructed on the theory of alibi as an affirmative defense. Rather, the claim that he was not at the scene when the crime occurred was characterized throughout the trial, and in his tendered instruction as a matter of misidentification. Furthermore, the trial court instructed upon the misidentification theory as defendant requested, except for the statement concerning defendant's alleged whereabouts.

Consequently, we are satisfied that the theory of defense the tendered instruction embodies was covered by the instructions given. Thus, the court's refusal to give the contested portion of the instruction was not error. *See People v. Martinez, supra; People v. White*, 632 P.2d 609 (Colo.App. 1981).

### III.

■ We also disagree with defendant that the trial court abused its discretion by sentencing him in the aggravated range. Its findings and conclusions make clear that the court considered several circumstances in determining that a sentence in the aggravated range was warranted. Among those circumstances was the fact that the defendant had previously served a term of incarceration for a sexual offense, that he was aware that the victim, who was sixty-four, had recently undergone surgery, and that the assault had likely been deliberately planned over several days. We conclude that these circumstances were sufficient to support the sentence imposed. *See People v. Phillips*, 652 P.2d 575 (Colo. 1982).

The judgment and sentence are affirmed.

TURSI and METZGER, JJ., concur.