The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Ricky C. PERRYMAN, Defendant–
Appellant.

No. 90CA1760.

Colorado Court of Appeals,
Div. I.

Feb. 25, 1993.

Rehearing Denied April 1, 1993.

Certiorari Denied Sept. 27, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PIERCE.

Defendant, Ricky C. Perryman, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We affirm.

On June 3, 1989, the partially nude body of a woman was discovered hidden under a blanket of insulation in an abandoned building. An autopsy revealed that she had been killed at approximately 1:00 a.m. on June 2, and that she had been beaten and sexual intercourse had occurred before she was strangled to death. Sheriff's investigators also discovered numerous shoe prints in and around the building where the victim was discovered.

Defendant, who was the last person seen with the victim the night she was killed, checked out of his hotel at 4:00 a.m. on June 2 and drove to Oklahoma.

Police officers interviewed defendant in Oklahoma on June 7, 1989. During the interview, he claimed that he had left the victim in the parking lot of his hotel at midnight on June 1. The officers asked for and were given defendant's shoes, which he admitted he was wearing on the night he was with the victim.

The soles of defendant's shoes were photographed, and the photographs were compared to a shoe print found on a piece of sheetrock in the building where the victim's body was discovered. Experts from the Colorado Bureau of Investigation later determined that the print on the sheetrock had been made by defendant's left shoe.

Subsequently, defendant was arrested and charged with first degree murder, felony murder, first degree sexual assault, and two counts of crime of violence. Following a trial to the jury, defendant was convicted of the lesser included offense of second degree murder and acquitted on the other charges.

I.

On appeal, defendant first contends that the trial court erred in admitting evidence of the shoe print identification and comparison. He argues that such evidence is based upon a "novel" scientific technique and that its admissibility is governed by the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). Defendant further argues that the prosecution did not establish that the print comparison testing procedures employed by the prosecution's experts were reliable and generally accepted in the scientific community as required under *Frye* and, therefore, the trial court erred in admitting the testimony. We disagree.

Whether a sufficient foundation has been laid for the admission of evidence is a matter within the sound discretion of the trial court, and its ruling will not be disturbed absent a clear abuse of that discretion. *See People v. Bell*, 809 P.2d 1026 (Colo.App.1990).

Under *Frye*, evidence based upon "novel" scientific techniques may be admitted upon a showing that (1) a theory supporting the proffered conclusion exists and is generally accepted in the scientific community, (2) techniques which are generally accepted in the scientific community exist and are capable of producing reliable results, and (3) the accepted scientific techniques were performed in this particular case. *See Frye v. United States, supra; People v. Lindsey*, —— P.2d —— (Colo.App. No. 90CA0556, January 7, 1992).

As our supreme court noted in *People v. Hampton*, 746 P.2d 947, 951–52 (Colo. 1987), the *Frye* test is appropriate in determining the admissibility of:

novel scientific devices and processes involving the manipulation of physical evidence including lie detectors, experimental systems of blood typing, voiceprints, identification of human bite marks, and microscopic analysis of gunshot residue. Accordingly, the *Frye* test has been applied in Colorado to the admissibility of polygraph results, *People v. Anderson*, 637 P.2d 354 (Colo.1981), DNA "fingerprinting," *People v. Lindsey, supra,* and "absorption inhibition" testing to determine the blood type of an assailant from semen samples left by him. *People v. Banks,* 804 P.2d 203 (Colo.App.1990). *See also* H. Furman, *The Introduction of Scientific Evidence in Criminal Cases,* 22 Colo.Law. 273 (1993). In each of these cases, the proffered evidence was obtained through some form of physical testing. *See People v. Banks, supra,* 804 P.2d at 204.

However, if the proffered evidence does not depend upon any scientific device or process, the *Frye* test has been rejected in favor of the less-restrictive test of CRE 702. *See, e.g., Campbell v. People,* 814 P.2d 1 (Colo.1991) (applying CRE 702 to expert testimony regarding the reliability of eyewitness identification); *People v. Hampton,* 746 P.2d 947 (Colo.1987) (applying CRE to expert testimony concerning the symptoms of rape trauma syndrome).

CRE 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The trial court retains discretionary authority under CRE 403 to exclude relevant expert testimony if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Campbell v. People, supra,* 814 P.2d at 8. Under the less restrictive test of CRE 702, a trial court's ruling to admit or exclude

such expert testimony will not be overruled on appeal unless the ruling is manifestly erroneous. *Campbell v. People, supra.*

■ Here, the prosecution offered the testimony of an expert to compare the characteristics of defendant's shoes to the prints found near the victim's body. Because this process involves no "manipulation" of physical evidence and because the understanding of the expert's techniques was readily accessible to the jury and not dependent upon familiarity with highly technical or obscure scientific theories, we conclude that CRE 702 is the appropriate test to determine the admissibility of the shoe identification and comparison in this case. *See State v. Hasan,* 205 Conn. 485, 534 A.2d 877 (1987) (rejecting the *Frye* test in determining the admissibility of forensic podiatry testimony establishing that sneakers were worn by defendant). Therefore, contrary to defendant's assertion, it was unnecessary for the prosecution to show that the theories and techniques applies were generally accepted in the scientific community under *Frye.*

Nevertheless, we conclude that the prosecution made a sufficient showing under either the *Frye* test or CRE 702 to admit the shoe print identification and comparison evidence.

Following a hearing at which the prosecution's expert testified, the trial court specifically found that "many courts have commonly accepted shoe comparisons as scientifically acceptable" and that nationwide standards exist capable of generating "scientifically reliable" results. It also found that the shoe comparison testimony offered by the prosecution "appears both reliable and probative" and that the jury would not give undue weight to the prosecution's expert because he was an expert. Finally, the trial court ruled that the prosecution's witness "could be qualified as an expert in the area of shoe comparisons," based upon his years of experience and education in the field. Because these findings are supported by ample evidence in the record, we find no abuse of discretion

in the trial court's ruling. *See People v. Bell, supra.*

Defendant contends that this showing was insufficient because *Frye* requires additional expert testimony, independent from that of their shoe print identification expert, as to the general acceptance of the field in the scientific community. We disagree.

■ We acknowledge that other jurisdictions which have applied the *Frye* test have required more than the testimony of a single expert regarding the acceptance of a field in the scientific community. *See, e.g., People v. Kelly,* 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 (1976) ("[W]e think it questionable whether the testimony of a single witness alone is ever sufficient to represent, or attest to, the views of an entire scientific community regarding the reliability of a new technique."). However, we conclude that the better reasoned view is that a trial court may rely on the testimony of a single witness in admitting scientific evidence under the *Frye* test if the witness is qualified through knowledge, skill, training, education, or experience to render an opinion as to the general acceptance of the techniques and the opposing party has an opportunity fully to cross-examine the expert on the basis of his opinions. *See People v. Banks, supra.* This standard provides an adequate assurance of reliability in the scientific testimony and avoids the unnecessary costs and delays occasioned by the presentation of cumulative or duplicative testimony.

Here, the prosecution's expert had over sixteen years of experience in the field of shoe print identification and comparison, had attended seminars on the subject with the leading authorities in the field, was familiar with the literature in the field, and had testified as an expert in numerous prior cases. Under these circumstances, we find no abuse of discretion in the trial court's admitting the shoe print identification and comparison evidence under *Frye* or CRE 702. *See People v. Banks, supra.*

## II.

Defendant next contends that the prosecution's evidence was insufficient to support his conviction as a matter of law. Again, we disagree.

### A.

■ Initially, defendant contends that the prosecution improperly based "inference upon inference and presumption upon presumption" because the jury was required to infer that the print found on the sheetrock had been caused by a specific brand of shoe, like defendant's, without hearing testimony comparing the characteristics of defendant's shoe to other makes or models of shoe. Moreover, he argues, the jury was further required to infer that *defendant's* shoe had left the print without the prosecution having established that another shoe of the same size could not have made a similar impression. Because thousands of other shoes of the type and brand of defendant's could conceivably have left the print found near the victim's body, defendant concludes, the prosecution's evidence was insufficient. This argument is without merit.

■ Relevant circumstantial evidence is generally admissible in a criminal trial. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973); *COLJI–Crim.* 4:01 (1983).

■ Whether direct or circumstantial evidence is sufficient to support a conviction is determined by whether that evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. It is not necessary that every reasonable hypothesis other than guilt be eliminated, as such considerations go only to the weight to be given the circumstantial evidence. *People v. Bennett, supra.*

Here, the prosecution's expert concluded that defendant's shoe had left the print on the sheetrock based upon five individual random characteristics, plus the general wear, sole design, shape, and other random

wear characteristics of the shoe. In addition, the expert testified that slight differences between the sole of defendant's shoe and the print found on the sheetrock were caused by small rocks in the shoe, which normally are picked up and fall out of the soles of such shoes in the course of a single day's wear. These conclusions were corroborated by the testimony of a second expert presented by the prosecution at trial.

The fact that the sole of defendant's shoe matched the print found near the victim's body is relevant circumstantial evidence of defendant's involvement in her death. It was not necessary for the prosecution to eliminate every other reasonable possibility than that the shoe prints were caused by defendant. *See People v. Bennett, supra.* Therefore, we cannot conclude that the prosecution's evidence was insufficient as a matter of law.

### B.

■ Defendant also contends that, even if the evidence of the shoe print comparison and identification was properly admitted, it was insufficient to convict him of second degree murder as a matter of law under *People v. Ray,* 626 P.2d 167 (Colo.1981). Again, we disagree.

In *Ray,* our supreme court held that evidence limited to one fingerprint on the inside of a milk chute, which was the means of entry used by a burglar, was not substantial and sufficient to support a conclusion by reasonable minds that the defendant was guilty of second degree burglary. In reaching this conclusion, the *Ray* court noted that the fingerprint was the only evidence tying the defendant to the crime, that the chute was generally accessible to the public, and that the prosecution did not establish that the fingerprint was impressed at the time the crime was committed. *See also Solis v. People,* 175 Colo. 127, 485 P.2d 903 (1971) (conviction for burglary overturned where fingerprint was only evidence linking defendant to the crime).

Here, however, the prosecution presented other evidence, in addition to the shoe print, linking defendant to the homicide. The prosecution showed that defendant was the last person seen with the victim before she was killed; that defendant had been wearing the shoes on the night he and the victim were seen together and that those were the only tennis shoes that he owned; and that defendant checked out of his hotel room early in the morning, within hours of the estimated time of the victim's death, and checked into another motel only a few hours away. Thus, unlike the sole fingerprint in *Ray,* the prosecution's footprint evidence was " 'coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the prints were impressed at a time other than that of the crime.' " *People v. Ray, supra,* 626 P.2d at 170.

Therefore, we conclude that the evidence presented at trial is sufficient to sustain defendant's conviction. *See People v. Bennett, supra.*

### III.

■ Defendant next argues that he was denied his right to present a defense and to cross-examine witnesses when the trial court refused to permit him to call one of the prosecuting attorneys as a witness to impeach the trial testimony of two of the investigating officers. We disagree.

■ A trial court is vested with broad discretion to control the mode and extent of presentation of evidence, and absent a clear abuse of that discretion, rulings thereon will not be disturbed on review. *People v. Cole,* 654 P.2d 830 (Colo.1982).

Although a criminal defendant may, in limited circumstances, impeach a witness through extrinsic evidence, the trial court must "exercise its sound discretion to preclude inquiries that have no probative force, or are irrelevant ... or which would have little effect on the witnesses credibility." *People v. Taylor,* 190 Colo. 210, 212–13, 545 P.2d 703, 705 (1976).

Here, two investigating officers testified at trial that they had informed prosecutors

in September 1989 that defendant's shoes were not listed on an invoice provided to defendant listing items of evidence in the possession of the police. Based upon this alleged break in the chain of custody, defendant claimed as part of his defense that the El Paso County Sheriff's office conducted an inadequate investigation and possibly "planted" the shoe print found near the victim's body.

Relying on her statement at a pretrial hearing, defendant sought to elicit the testimony of one of the prosecuting attorneys concerning this alleged break in the chain of custody. Among other things, defendant expected the prosecutor to testify that the officers did not inform the prosecution about the failure to include the shoes in the invoice until February 1990 and that the alleged conversation between the prosecutor and investigating officers occurred over the telephone and not in person, as the officers had testified.

The trial court refused to permit defendant to call the prosecutor as a witness, finding that her expected testimony related only to alleged discovery violations and not the guilt or innocence of defendant. Moreover, the trial court found that her testimony was "so tangential and so far outside of what is necessary in this case" and that calling the prosecutor as a witness "has [a] potentially very negative effect on this case."

Based upon these facts, we find no abuse of discretion in the trial court's refusal to permit defendant to call the prosecutor as a witness. *People v. Cole, supra.*

## IV.

■ Next, we disagree with defendant's contention that the trial court erred in refusing to excuse a juror who had spoken with a witness for the prosecution during trial.

■ In order to justify a new trial based on jury taint, a criminal defendant must show evidence of actual prejudice. Prejudice will not be presumed solely upon a showing of an improper communication between a juror and a third-party. Fur-

ther, it is within the sound discretion of the trial court to determine whether prejudice resulted from an improper communication with a juror, and its decision should not be overturned on appeal in the absence of a clear abuse of that discretion. *People v. Hickam*, 684 P.2d 228 (Colo.1984).

Here, during a recess at trial, a juror approached one of the prosecution's shoe print identification experts and commented that following his testimony she had a better understanding of the difference between latent and patent prints. The expert asked if she was a juror, and when she replied that she was, he informed her that he could not speak with her. Prior to the time the court reconvened, the expert informed the prosecutors of his contact with the juror.

Defendant then moved to excuse the juror, and a hearing was held at which the trial court heard testimony from the prosecution's expert and the juror. Based upon this testimony, the trial court concluded that although the juror should not have spoken with the expert, the exchange was "harmless." Moreover, the trial court admonished the juror to base her decision "on what you hear in the courtroom and nothing else really," and the juror acknowledged that she would.

While a juror's assurance that improper communications will not influence deliberations is not alone conclusive as to the issue of prejudice, *see People v. Moore*, 701 P.2d 1249 (Colo.App.1985), defendant here failed to present any evidence that the jury was tainted as a result of the improper communications. Therefore, the trial court did not abuse its discretion in failing to excuse the juror.

## V.

Defendant next argues that the trial court erred in denying his motions to dismiss the charges against him based on certain alleged discovery violations and the failure of the El Paso County Sheriff's Department adequately to preserve the crime scene. We disagree.

### A. Discovery Violations

■ Prosecutors failed to provide defendant with certain diagrams, notes, and police reports in their possession concerning the investigation until approximately four weeks prior to his trial. Defendant alleges that this failure to disclose in a timely manner resulted in prejudice to his defense, and, therefore, the trial court erred in refusing to dismiss the charges against him. We perceive no error in this ruling.

Crim.P. 16(I)(a)(1) provides, in pertinent part, that:

> The prosecuting attorney shall make available to the defendant the following material and information which is within the possession or control of the prosecuting attorney, and shall provide duplicates upon request, and concerning the pending case:
>
> I. Police, arrest and crime or offense reports, including statements of all witnesses, the accused, and any codefendant;
>
> . . . .
>
> IV. Any books, papers, documents, photographs or tangible objects held as evidence in connection with the case....

In addition, Crim.P. 16(II)(a)(2) provides that: "The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control that tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor."

■ That the prosecution's duty to disclose extends to material in possession or control of those reporting to the prosecutor, and prosecutors are required to maintain conditions adequate to obtain such material from various investigative personnel, including police officers. *Chambers v. People*, 682 P.2d 1173 (Colo.1984).

■ Compliance with the disclosure requirements of Crim.P. 16 is mandatory, *see Chambers v. People, supra*, and a trial court has broad discretion to fashion an appropriate remedy if the prosecution has failed to meet its duty to disclose. *People v. District Court*, 808 P.2d 831 (Colo.1991); Crim.P. 16(III)(g).

■ However, a trial court's discretion in this area is not unlimited; the court should impose the "least severe sanction that will ensure that there is full compliance" with the disclosure requirements. *People v. District Court, supra*, at 836–37.

■ In determining an appropriate sanction, a trial court should consider the reasons why disclosure was not made; the extent of the prejudice to defendant, if any; the feasibility of rectifying the prejudice by a continuance; and any other relevant circumstances. *People v. District Court, supra*. Dismissal is a drastic remedy and should not be employed except if no other remedy would attain the proper result. *People v. Holloway*, 649 P.2d 318 (Colo. 1982).

Here, the trial court acknowledged that the prosecution had made numerous discovery violations. However, the court also noted that the "information that was not provided [did not] appear to be strikingly new or to have a large impact on the case," and that the failure to disclose had not resulted from any bad faith by the sheriff's office or the prosecution. Moreover, defendant failed to show that dismissal would be the only sanction sufficient to cure any prejudice resulting from the prosecution's failure to make a timely disclosure. Therefore, the trial court stated that it would provide defendant a continuance at the prosecution's expense to investigate the newly-disclosed files; however, it declined to dismiss or reduce the charges against defendant.

Under these circumstances, we conclude that the trial court did not abuse its discretion in refusing to dismiss the charges against defendant. *People v. Holloway, supra*.

### B.

### Failure to Maintain Integrity of Crime Scene

■ Defendant also alleges that the sheriff's department failed to preserve ex-

culpatory evidence at the crime scene. Specifically, defendant alleges that investigators failed to instruct officers as to where they could walk at the crime scene; that they made no effort to secure the scene after the officers left following their initial investigation on June 4, 1989; that they failed to keep a record of the shoes the officers wore at the scene; and that, although one of the officers saw the sheetrock with defendant's shoe print on it on June 4, 1989, nothing was done to preserve or protect the sheetrock and no record of other prints at the scene was made. Therefore, he concludes, the failure properly to investigate the crime scene denied his right to due process. Again, we perceive no error in the trial court's ruling.

■ A criminal defendant is entitled to have sanctions imposed against the prosecution if his due process rights have been violated by the prosecution's failure to preserve material evidence. *People v. Enriquez,* 763 P.2d 1033 (Colo.1988).

■ But, in order to demonstrate the materiality of potentially exculpatory evidence, the defendant must establish that (1) the evidence possessed an exculpatory value that was apparent before the evidence was destroyed or lost and (2) he would be unable to obtain comparable evidence by other reasonably available means. Furthermore, the failure to preserve potentially useful evidence does not constitute a denial of due process unless a defendant makes a showing of bad faith on the part of the law enforcement officers. *People v. Schrecongost,* 796 P.2d 45 (Colo.App.1990), aff'd, 810 P.2d 1068 (Colo.1991).

Here, the trial court denied defendant's motion to dismiss, finding that he had only speculated as to evidence that might have been present at the scene and had failed to establish that any unpreserved items at the crime scene had any exculpatory value or that any evidence had been collected and destroyed by the prosecution. Moreover, the trial court found that defendant had failed to show any bad faith or intentional misconduct on the part of the prosecution or police.

Because these conclusions are supported by the record, we find no error in the trial court's refusal to dismiss the charges against defendant. *People v. Schrecongost, supra.*

## VI.

■ Finally, defendant contends that the jury's verdict finding him guilty of second degree murder, but not guilty of sexual assault, is fatally inconsistent because the prosecution's evidence showed that the homicide was sexually motivated. We disagree.

■ A jury verdict should not be reversed for inconsistency if the offenses charged required different elements of proof and the jury could have found from the same evidence that the element of one crime was present while at the same time finding that the element of another charged crime was absent. *People v. Powell,* 716 P.2d 1096 (Colo.1986).

Here, the defendant was charged with both felony murder and first degree murder. The jury was instructed that the defendant was guilty of felony murder if the death at issue was caused "in the course of or in furtherance of, sexual assault in the first degree, or in immediate flight therefrom...." It was also instructed as to the elements of first degree murder after deliberation and that, if it did not find beyond a reasonable doubt that the defendant was guilty of the offense charged, it could find him guilty of any lesser included offense.

The offense of first degree murder after deliberation necessarily includes the lesser offense of second degree murder, and thus, the jury was instructed as to the elements of second degree murder. Finally, the jury was instructed that it could not find the defendant guilty of both first degree murder after deliberation and second degree murder.

Under these instructions, the evidence of sexual motivation was relevant only to the charge of felony murder. Thus, a jury finding that defendant did not, beyond a reasonable doubt, commit sexual assault is not inconsistent with a jury finding that

defendant knowingly killed the victim. The evidence of defendant's shoe prints found near the victim's body, coupled with the fact that he was the last person seen with the victim the night she was killed and of his apparent flight, tends to support a jury finding that defendant knowingly killed the victim independent of evidence of a sexual assault.

Therefore, the jury's verdict finding defendant guilty of second degree murder, but not first degree sexual assault, is not fatally inconsistent. *See People v. Powell, supra.*

The judgment of the trial court is affirmed.

METZGER and DAVIDSON, JJ., concur.