**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Jerreld Wayne PARKS,
Defendant–Appellee.**

No. 86SA265.

Supreme Court of Colorado,
En Banc.

Feb. 1, 1988.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Michael J.

Milne, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal from a judgment of acquittal notwithstanding a jury verdict finding the defendant, Jerreld Parks, guilty of aggravated robbery. In entering the judgment of acquittal, the district court ruled that evidence concerning the identification of the defendant as the perpetrator of the crime was insufficient as a matter of law to support the guilty verdict. We reverse and remand the case to the district court for further proceedings.

## I.

The defendant was charged with aggravated robbery by using a deadly weapon, a handgun, in taking money from the person or presence of Daniel Rupp on October 23, 1985, in Adams County, Colorado. The defendant entered a not guilty plea to the charge, and the case was tried to a jury commencing on April 24, 1986. Because the issue before us relates to the legal sufficiency of the evidence to support the verdict, a detailed statement of the evidence admitted at trial is necessary.

Daniel Rupp, the victim of the aggravated robbery, testified that at approximately 8:15 p.m. on October 23, 1985, he was working alone as a cashier at a Vickers gas station when he was confronted by a black male carrying a gun in his left hand. The man was wearing dark sunglasses, a baseball cap with the brim to the rear, a blue jean coat, jean pants, and high-top tennis shoes. The man pointed the gun at Rupp and stated that he wanted money. He told Rupp to "put down the [writing] pen" which Rupp was holding and to "hurry up" and give him the money. After Rupp gave him approximately $130 from the cash drawer, the man left the store and started walking away from the building toward the west. Rupp watched the man walk away and then telephoned the police. An officer responded to the scene and conducted an investigation.

During Rupp's direct examination, the prosecutor requested the defendant to stand up and repeat the following words: "Put down the pen." The defendant complied without objection with the prosecutor's request. Rupp then testified that, based on the defendant's speech, build, and manner of talking, he was 99.9 percent certain that the defendant was the person who committed the robbery. Rupp acknowledged in the course of his direct examination that he had previously attended a preliminary hearing and had testified at that hearing that the defendant was "possibly" the person who had robbed him on the night in question. Rupp further testified, however, that after hearing the defendant speak the words "hurry up" at the preliminary hearing, he was then "99.9 percent certain" of his identification of the defendant.

In cross-examining Rupp at trial, defense counsel pointed out that the defendant was the only black person in the courtroom during the preliminary hearing. Defense counsel also established that at the preliminary hearing Rupp testified that the robber was in the station for approximately a minute and a half, but Rupp's trial testimony was that the robber was in the station for no more than twenty seconds. Defense counsel further established that Rupp told the investigating officer that the robber had a relatively thin nose and no mustache, when in fact the defendant had a mustache, a broad nose, and also a permanent scar on his forehead. Rupp acknowledged that he did not tell the police that the robber had a scar on his forehead, but added that he did not get a good look at the robber's entire face because he (the robber) was wearing sunglasses and his hat was pulled down low on his forehead. During cross-examination Rupp repeated his prior testimony that he was 99.9 percent certain of his identification, stating that the defendant "looked closer to the person that robbed [him] than nine out of ten men you take off the street."

The prosecution also elicited testimony from Harold Myers. He testified that he lived in an apartment complex one block west of the Vickers station and was standing in the parking lot of the complex around 8:00 p.m. on October 23, 1985. At that time he observed a man drive a car into the parking lot and park under a street light approximately 60 feet from where he was standing. Myers saw a black man get out of the car, put on a baseball cap backwards, and walk in the direction of the Vickers station. According to Myers' testimony, he was able to clearly see the man's face as the man got out of the car. He described the man as approximately five feet nine inches tall, wearing dark clothing, and carrying an unidentified object in his left hand. Myers further testified that a few minutes after initially seeing this man in the parking lot, he again observed the same man walking back to the car, getting into the car, and driving away. He described the car as a dark gray Camaro, "a two door sporty-type car," with a rear Colorado license plate that ended with the numbers 166. Myers testified that although he could not remember the three letters preceding the numbers, he believed that two of the letters were EA and he was certain that the three letters had a "rhythm to [them]." He described the car to the investigating officer and told him that the front plate of the car was a decorative, metallic-like plate.

During Myers' redirect examination, Deputy District Attorney Meinert, who was prosecuting the case, asked him whether he remembered Meinert being at the preliminary hearing. Myers responded that he was sure that Meinert had been there. At the close of Myers' redirect testimony, the district court inquired of Deputy District Attorney Meinert, out of the jury's presence, whether he had actually conducted the preliminary hearing. When Meinert stated that in fact he had not, the court informed the jury that it was taking judicial notice of the fact that Meinert had not conducted the preliminary hearing.

The prosecution also presented testimony from Officer Larry Peterson of the Adams County Sheriff's Department. Officer Peterson conducted a follow-up investigation of the robbery. He testified that after he had received information from Rupp and Myers concerning their observations on the night in question, he recalled having seen a "contact card" which reported a traffic stop of a black male driving a Chevrolet Camaro with a Colorado license plate ending in 166. A check of the contact card indicated that the driver of the car was Jerreld Wayne Parks and the full license plate number was SEA–166. Officer Peterson then contacted the Department of Motor Vehicles for a registration check on the vehicle and learned that the vehicle was registered to Jerreld Parks who lived at 7840 Valley View Drive.

Officer Peterson further testified that on October 24, 1986, the day after the robbery, he contacted Rupp at the Vickers station and showed him a folder containing photographs of six black males, including the defendant. Peterson asked Rupp if he recognized any of them. Rupp periodically looked at the photographs while waiting on customers and then selected two photographs, neither of which was the defendant's, and told the officer that either photograph could possibly be a photo of the man who had robbed him. Rupp also told the officer that, although he was not sure about any of the photographs, the other photographs did not look familiar.

Officer Peterson showed the same six photographs to Myers on the same day and asked if he could identify any of them. At first Myers selected two photographs, one of which was a picture of the defendant. Approximately thirty minutes later, Myers again looked at the six photographs and told Officer Peterson that he was "almost positive" that the photograph of the defendant depicted the person that he had seen in the parking lot on the night of the robbery. On the following day, October 25, 1985, the officer took Myers to the defendant's neighborhood and asked him whether any of the vehicles looked familiar. Myers identified the defendant's gray Camaro as the car which he had seen in the parking lot on the night of the robbery.

At the conclusion of the prosecution's case, the defendant made a motion for a judgment of acquittal. The court denied the motion. Before presenting any evidence, defense counsel, with the court's approval, called Deputy District Attorney Michael Milne, who represented the prosecution at the preliminary hearing, and requested him to stand before the jury. The deputy district attorney complied. Defense counsel then called as his sole witness Rachael Vigil, a private investigator. She testified that the defendant was five feet seven inches tall, and that, according to her measurements, the distance from the point where Myers claimed he was standing in the parking lot to the point where the man parked a vehicle in the parking lot and got out of the vehicle was seventy feet.

The prosecution then called Myers as a rebuttal witness. Myers identified Deputy District Attorney Milne as the prosecuting attorney at the preliminary hearing, and acknowledged that he had been mistaken when he testified earlier that Deputy District Attorney Meinert had conducted the preliminary hearing.

After closing arguments, the jury deliberated and ultimately returned a guilty verdict to the charge of aggravated robbery. After receiving the verdict, the court informed counsel for both sides that it had "some real hesitancy about the verdict of the jury as it relates to the identification [of the defendant]." The court requested defense counsel to file a motion for a judgment of acquittal notwithstanding the verdict. The motion was filed and, after arguments from both sides, the court granted the motion.

In ruling on the motion, the court analyzed the identification testimony of the prosecution's two principal witnesses, Myers and Rupp. The court stated that the discrepancies in Rupp's testimony about the robber's nose, mustache, and scar were not sufficient to permit the court to disregard the jury's verdict. The court also stated that Rupp's failure to identify the defendant at the photographic lineup was not sufficient reason to disturb the jury verdict. The court, however, then focused on Rupp's statement during cross-examination that the defendant looked "closer to the man that robbed [him] than nine out of ten men you take off the street" and ruled, in pertinent part, that such testimony was insufficient to establish the identification of the defendant as the perpetrator of the crime beyond a reasonable doubt. The court also ruled that it did not believe that Rupp was able to make a valid voice identification of the defendant as the robber because Rupp's alleged voice identification was based only on eight or nine words. Turning to the identification testimony of Myers, the court ruled that since Myers had misidentified Deputy District Attorney Meinert as the prosecutor who conducted the preliminary hearing, Myers' identification of the defendant as the perpetrator of the robbery was "incredible as a matter of law." The court then concluded that, apart from the identification testimony of Rupp and Myers, the only other evidence linking the defendant to the crime was Myers' description of the vehicle in the parking lot. Since this other evidence was insufficient as a matter of law to support the jury's verdict, the court entered a judgment of acquittal.

## II.

While acknowledging that there were some inconsistencies in the testimony of Rupp and Myers concerning the identification of the defendant as the perpetrator of the offense, the People nonetheless argue that the prosecution's evidence was not incredible as a matter of law and, when viewed in a light most favorable to the prosecution, was sufficient to withstand the defendant's motion for a judgment of acquittal. We agree with the People's claim.

## A.

■ In ruling on a motion for a judgment of acquittal after a guilty verdict has been returned, a trial court must consider all the evidence, both that presented by the prosecution and the defense, and determine whether the evidence, when viewed as a whole and in a light most favorable to the

prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *E.g., People v. Brassfield,* 652 P.2d 588 (Colo.1982); *People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed. 2d 655 (1982); *see also People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). In determining whether the evidence is sufficient to withstand a motion for a judgment of acquittal, the trial court must accord the prosecution "the benefit of every reasonable inference which might fairly be drawn from the evidence." *People v. Downer,* 192 Colo. 264, 268, 557 P.2d 835, 838 (1976). The trial court, in other words, must not attempt to serve "as a thirteenth juror or invade the province of the jury." *Bennett,* 183 Colo. at 130, 515 P.2d at 469; *accord, e.g., Brassfield,* 652 P.2d 588; *People v. Franklin,* 645 P.2d 1 (Colo.1982); *People v. Ray,* 626 P.2d 167 (Colo.1981).

> The limitation upon a judge's power to set aside a jury verdict is based, to a substantial degree, upon the fundamental tenet that it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence. *People v. Franklin,* 645 P.2d at 5. Only when a witness' testimony is "palpably incredible and . . . totally unbelievable" may the court properly reject it as a matter of law. *Id.* at 4; *People v. Gennings,* 196 Colo. 208, 583 P.2d 908 (1978); *People v. Urso,* 129 Colo. 292, 269 P.2d 709 (1954). Even then, a judgment of acquittal would still be inappropriate if the remaining evidence, when appropriately viewed, is legally sufficient to support a finding of guilt by a reasonable person beyond a reasonable doubt. *E.g., People v. Franklin, supra.*

*Brassfield,* 652 P.2d at 592.

While eyewitness identification evidence is not infallible, and indeed is often burdened by the same limitations of perception, memory, and susceptibility to suggestive influences which inhere in the human condition, the law has never required that such evidence be totally devoid of all possibility of doubt in order to withstand a motion for a judgment of acquittal. *See People v. Layton,* 200 Colo. 59, 612 P.2d 83 (1980); *Raullerson v. People,* 157 Colo. 462, 404 P.2d 149 (1965); *People v. Spinuzzi,* 149 Colo. 391, 369 P.2d 427 (1962). In *People v. Rivas,* 197 Colo. 131, 591 P.2d 83 (1979), we considered whether the prosecution's eyewitness testimony, although inconsistent in some particulars, was nonetheless sufficient to withstand a motion for a judgment of acquittal. In that case, the trial court entered a judgment of acquittal notwithstanding the jury's guilty verdict to the crime of assault in the first degree. In entering a judgment of acquittal, the trial court relied heavily on "the unsworn extrajudicial statements of the two eyewitnesses, which were inconsistent with their testimony in court, as well as in significant conflict with the testimony of other witnesses." 197 Colo. at 135, 591 P.2d at 86. In light of the inconsistent nature of the eyewitness testimony, the trial court ruled that their testimony was incredible and thus incompetent, and accordingly determined that "there was no evidence to support a conclusion by a reasonable mind that Rivas was guilty beyond a reasonable doubt." *Id.* In reversing the trial court's ruling, this court emphasized that it is not the function of a reviewing court to "usurp the province of the jury by making a redetermination of any possible conflicts in the evidence" and then stated:

> A review of the evidence here reveals that both eyewitnesses, neither of whom knew the other prior to the stabbing, identified Rivas as the person who stabbed the victim Lopez. Despite impeachment attempts by the defense, the jury, by its guilty verdict, indicated that it believed the in-court identification made by the eyewitnesses. This testimony was not so palpably incredible and so totally unbelievable as to be rejected as a matter of law. [Citations omitted]. Hence, the court erred in granting Rivas' motion for judgment notwithstanding the verdict.

*Id.* at 136, 591 P.2d at 86.

Inconsistencies in trial testimony "are not uncommon to the adversary process which, of necessity, must rely upon the

sometimes contradictory and often incomplete testimony of human observers in attempting to reconstruct the historical facts underlying an event." *Brassfield*, 652 P.2d at 593. Indeed, it is precisely because "issues of credibility and weight are difficult to resolve and yet essential to the ultimate issue of guilt or innocence that the law entrusts these matters to the collective and diverse experience and judgment of the jury." *Id.*

### B.

■ In this case the district court ruled that Daniel Rupp, the victim of the offense, did not sufficiently identify the defendant as the perpetrator of the crime because Rupp's statement that the defendant "looked closer to the person who robbed [him] than nine out of ten men you take off the street" did not satisfy the standard of proof beyond a reasonable doubt. The district court, however, failed to mention in its ruling that Rupp also testified that, based on the defendant's voice, build, and manner of talking, he was "99.9 percent certain" of his identification of the defendant as the robber. Although the district court noted that Rupp's voice identification was based on the defendant's repetition of only eight or nine words spoken by the robber, Rupp's identification of the defendant's voice as that of the robber must be taken in conjunction with his other observations, including his observations of the defendant's build and his manner of talking, which permitted him to be virtually certain of his identification of the defendant as the robber. Thus, the district court erred in ruling that Rupp's identification of the defendant was insufficient as a matter of law.

■ The district court also erred in concluding that Myers' misidentification of the deputy district attorney who conducted the preliminary hearing rendered his other identification testimony of the defendant as the robber "so palpably incredible and so totally unbelievable" to be rejected as a matter of law. Several aspects of Myers'

in-trial identification of the defendant were uncontradicted and indeed were corroborated by other evidence. On the day after the robbery, Myers viewed the photographic lineup, selected the defendant's photograph, and stated that he was "almost positive" that it depicted the person he observed on the evening of the crime. Furthermore, Myers' general description of the clothing worn by the person whom he observed in the parking lot immediately prior to the robbery coincided in great detail with Rupp's description of the clothing worn by the robber. In addition, Myers' description of the automobile seen by him on this occasion matched the defendant's automobile in several particulars, including the general type of automobile and the last three digit numbers on the rear license plate.[1] Finally, two days after the robbery Myers positively identified the defendant's vehicle as the one he observed in the parking lot on the night of the robbery.

While the record shows that Myers incorrectly identified the deputy district attorney who prosecuted the case at trial as the prosecuting attorney at the preliminary hearing, Myers later testified on redirect examination that he was mistaken and correctly identified the deputy district attorney who conducted the preliminary hearing. Any inconsistency in Myers' testimony in this respect does not render his identification of the defendant incredible as a matter of law. Rather, Myers' misidentification of the deputy district attorney was only one factor to be considered by the jury, along with all the other evidence in the case, in determining whether the defendant committed the crime charged against him.

Viewing the record as a whole and in a light most favorable to the prosecution, we are satisfied that the evidence was sufficient to justify a reasonable person in concluding beyond a reasonable doubt that the defendant committed the crime charged against him. The district court accordingly erred in granting the defendant's motion

---

1. Myers' initial description to the investigating officer of the robber's automobile was that the vehicle's front license plate was a decorative, metallic-like plate that glittered or reflected and appeared to have eight or ten stars on it. The front license plate on the defendant's automobile was decorative; however, it did not contain stars. Rather, it had the following slogan printed on it in blue ornate print: *"THE LORD GIVETH* THE GOVERNMENT TAKETH AWAY."

for a judgment of acquittal notwithstanding the jury verdict.

### III.

 When an appellate court reverses a trial court's order granting a judgment of acquittal notwithstanding the verdict, it may properly remand the case to the trial court with directions to reinstate the jury verdict without violating the constitutional prohibition against twice placing the defendant in jeopardy for the same offense. *E.g., Brassfield,* 652 P.2d 588; *Rivas,* 197 Colo. 131, 591 P.2d 83; *People v. Dowdell,* 197 Colo. 76, 589 P.2d 948 (1979). Our reversal of the judgment of acquittal places this case in the same procedural posture it would have been in had the judgment of acquittal never been entered. If there are no other motions awaiting resolution by the district court, the district court should enter a judgment of conviction and set this case for a pre-sentence hearing.

The judgment of acquittal is accordingly reversed and the case is remanded to the district court for further proceedings consistent with the views herein expressed.

ROVIRA, J., does not participate.