The **PEOPLE** of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

James Michael **MADISON**, Defendant–Appellee and Cross–Appellant.

No. 04CA2427.

Colorado Court of Appeals, Div. IV.

May 3, 2007.

Rehearing Denied June 21, 2007.

Certiorari Denied Feb. 19, 2008.

John W. Suthers, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado; John R. Newsome, District Attorney, Donna Billek, Deputy District Attorney, Abby V. Wallace, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge CASEBOLT.

Defendant, James Michael Madison, appeals the judgment of conviction entered on jury verdicts finding him guilty of causing serious bodily injury to an at-risk adult by criminal negligence, a class five felony, and a crime of violence sentence enhancer therefor; possession of one gram or less of cocaine, a class six felony; possession of one to eight ounces of marijuana, a class one misdemeanor; and possession of drug paraphernalia, a class two petty offense. The People also appeal, challenging the trial court's judgment of acquittal upon one count of second degree

assault against an at-risk adult, a class three felony, and a crime of violence sentence enhancer therefor. We affirm in part, reverse in part, and remand.

Defendant lived in the basement of his parents' home and continued to live with the victim, his eighty-one-year-old father, following his mother's death. Although defendant was trained as a respiratory therapist, he did not work outside the home. Instead, he maintained that his job was to care for his father.

Father's neighbors, accustomed to seeing him sitting on his front porch, became concerned when he stopped coming outside. Two neighbors brought meals to father and attempted to ascertain his well-being but were unsuccessful in their efforts to see or speak with him. Concerned for father's welfare, one neighbor called the police and asked them to conduct a welfare check.

Officers went to the home and met defendant at the front door. Defendant told the officers that father was doing well, but allowed the officers inside and directed them to father's bedroom. A strong odor of urine and feces assailed the officers when they entered the house. Upon entering the father's room they found him lying on a mattress soaked with his own body waste. His clothes, stained with urine and feces, were embedded in his skin. His bed was covered with debris, making it impossible for him turn over or alter his reclined position. Father had not been out of bed for a month, was very weak, and had trouble talking.

An officer noted that defendant was comfortable using medical terminology and stated that he had received "a lot" of medical training. Defendant said that he had known of father's bedsores for a week, when he had first seen the open wounds. After a preliminary examination of the scene, the officers called for medical assistance.

Paramedics transported father to the hospital. There, medical staff cut off father's clothing, noting that it had become enmeshed in his skin. Father screamed in pain when his clothes were removed. Medical staff saw black and dead tissue come off father during a shower. One EMT saw what looked like maggots.

Father was examined by a physician, who testified at trial that father was dehydrated, anemic, suffering from malnutrition, and had pressure sores running from his shoulders to the back portion of his thighs. The physician also opined that father was receiving very little care.

Defendant had explained to the officers that he had tried to cleanse father, had examined his back because he was complaining of back pain, and had tried to take father to the hospital, but father had refused all his offers of help. But after his physical recovery, father told officers that defendant had called him names, yelled at him, and refused to get him out of bed, change his linens, or take him to the bathroom. Police officers testified at trial that father appeared to be afraid of defendant.

During a search of the residence, officers discovered cocaine, marijuana, and drug paraphernalia. Defendant was arrested and charged as previously noted.

At trial, following the conclusion of the prosecution's case-in-chief, defendant moved for a judgment of acquittal on count one, second degree assault, and count three, causing serious bodily injury to an at-risk adult by criminal negligence, and the associated sentence enhancer counts (counts two and four). The trial court ruled that the prosecution had not presented sufficient evidence to prove the intent necessary to support a finding of guilt on second degree assault and granted the motion as to that charge, but denied the motion as to the criminal negligence charge.

Defendant presented two witnesses, both of whom testified concerning the acrimonious relationship between father and defendant. The prosecution then requested the court to reconsider its ruling on the motion for judgment of acquittal. Concluding that defendant had himself presented evidence of intent in the defense case, the court reversed itself, reinstated the second degree assault and sentence enhancer charges, and submitted all charges to the jury. The jury returned guilty verdicts on all counts.

During sentencing, defendant requested the court to reconsider its ruling reinstating counts one and two, contending that his right to present a defense had been chilled by the court's initial grant of the motion and its later reversal, and also asserting that principles of double jeopardy required it. The trial court rejected the double jeopardy argument, concluding that it maintained the ability to review its decision until the jury was dismissed. However, reasoning that its ruling and later reversal had chilled defendant's right to present a defense, the court again reversed itself and dismissed counts one and two. This appeal followed.

## I.

■ We first address the People's appeal. The People contend that the trial court erred in granting defendant's initial motion for judgment of acquittal because the prosecution's evidence was sufficient to support a conclusion that defendant was guilty beyond a reasonable doubt of second degree assault upon an at-risk adult. We agree.

■ When ruling on a motion for judgment of acquittal, the issue before the trial court is "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Gonzales*, 666 P.2d 123, 127 (Colo.1983) (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

■ In applying the substantial evidence test, the court must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Brassfield*, 652 P.2d 588, 592 (Colo. 1982).

Under § 18–3–203(1)(g), C.R.S.2006, a person commits second degree assault upon an at-risk adult (a disabled person who is sixty years of age or older) as set forth in § 18–6.5–103(1) & (3)(b), C.R.S.2006, if, with intent to cause bodily injury to another person, he causes serious bodily injury to that person or another.

Second degree assault requires specific intent to cause bodily injury. Specific intent exists when a perpetrator's "conscious objective is to cause the specific result proscribed by the statute defining the offense." Section 18–1–501(5), C.R.S.2006.

Bodily injury means physical pain, illness, or any impairment of physical or mental condition. Section 18–1–901(3)(c), C.R.S. 2006.

■ Intent can be proved by means other than direct evidence. A fact finder may infer intent to cause the natural and probable consequences of unlawful voluntary acts, and pertinent to the inquiry is the defendant's conduct and the circumstances surrounding any act or omission. *See People v. Juvenile Court*, 813 P.2d 326, 330 (Colo.1991); *People v. Howard*, 89 P.3d 441, 444 (Colo.App.2003) (jurors could infer defendant's specific intent from conduct and the overall circumstances); *see also People v. Thompson*, 121 P.3d 273, 278–79 (Colo.App.2005)(recognizing that if there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element, and where reasonable minds could differ, the evidence is sufficient to sustain a conviction).

Here, construing the evidence previously recited in the light most favorable to the prosecution, we conclude that there is sufficient evidence to infer that it was defendant's conscious objective to cause father physical pain, based upon the following.

First, defendant had medical training, which allowed him to recognize father's serious physical and mental condition and its continuing deterioration. Essentially, the worse the conditions got, the greater is the inference that defendant intended to harm father and for his injuries to worsen.

Second, for a significant length of time, father had been bedridden without a change of clothing and without appropriate toileting or hygiene, allowing open sores to develop and bodily waste to intrude upon those wounds.

Third, defendant failed to seek any kind of professional care for father. After examining father's injuries, defendant did not call

for medical assistance, nor did he clean the urine or feces off of father or assist him into a new reclined position. Instead, defendant rolled father back onto the mattress, which was soaked with urine and feces, into the same reclined position that was causing the bedsores. Defendant's physical act of putting father back onto the mattress and into the same reclined position exacerbated his pain and physical decay.

Fourth, defendant verbally abused father, and father feared defendant.

Accordingly, the trial court erred in granting defendant's motion for judgment of acquittal upon the second degree assault charge and the associated sentence enhancer.

## II.

█ The People next assert that, because the trial court ultimately granted the motion for judgment of acquittal on the second degree assault charge after the jury returned a guilty verdict on that count, the order of acquittal can be reversed and the jury verdict reinstated without running afoul of double jeopardy concerns. We agree.

█ "When an appellate court reverses a trial court's order granting a judgment of acquittal notwithstanding the verdict, it may properly remand the case to the trial court with directions to reinstate the jury verdict without violating the constitutional prohibition against twice placing the defendant in jeopardy for the same offense." *People v. Parks,* 749 P.2d 417, 423 (Colo.1988). As in *Parks,* here "[o]ur reversal of the judgment of acquittal places this case in the same procedural posture it would have been in had the judgment of acquittal never been entered." *People v. Parks, supra,* 749 P.2d at 423.

Defendant nevertheless asserts that *Smith v. Massachusetts,* 543 U.S. 462, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005), requires that the trial court's reinstatement of the judgment of acquittal must stand. Specifically, defendant asserts that the Double Jeopardy Clause bars the trial court from retracting the midtrial acquittal. We disagree.

█ The Fifth Amendment and article II, § 18 of the Colorado Constitution protect an accused from being placed in jeopardy twice for the same offense. *People v. Dist. Court,* 663 P.2d 616, 619 (Colo.1983). However, a defendant's double jeopardy rights are violated only if (1) jeopardy attached at a proceeding and (2) an event terminated that "first" jeopardy and exposed the defendant to a "second" or "double" jeopardy. *People v. Valencia,* 169 P.3d 212 (Colo.App. 2007).

In *Smith,* the defendant was tried in state court for three counts relating to a shooting. The unlawful possession of a firearm count required proof that the gun had a barrel of less than sixteen inches. At the conclusion of the prosecution's case-in-chief, the court granted the defendant's motion for judgment of acquittal on that count, ruling that the prosecution had failed to present sufficient evidence to meet that requirement.

The defense then proceeded with its case on the remaining counts. During a recess before closing arguments, the prosecutor asked the court to reconsider its ruling, supplying it with precedent establishing that the description of the kind of gun satisfied the sixteen-inch barrel requirement. The court agreed and submitted the charge to the jury, which returned a guilty verdict. The judgment was affirmed on appeal to the Massachusetts Appeals Court, and the state supreme court denied further review.

Upon certiorari review, the United States Supreme Court specifically noted that as a general matter, state law may prescribe that a judge's midtrial determination of the sufficiency of the state's proof can be reconsidered without running afoul of double jeopardy principles. The Court stated:

> If, after a facially unqualified midtrial dismissal of one count, the trial has proceeded to the defendant's introduction of evidence, the acquittal must be treated as final, unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence.

*Smith v. Massachusetts, supra,* 543 U.S. at 473, 125 S.Ct. at 1137. However, because Massachusetts had not established a rule to

permit reconsideration, the Court held that the Double Jeopardy Clause did not permit the trial court to reconsider the acquittal. The Court reasoned that, absent any indication that a midtrial ruling of acquittal was subject to reconsideration, a defendant risked prejudicing himself by presenting a defense to an undismissed charge when the better approach would be to remain silent.

The question here, then, is whether Colorado has plainly established by pre-existing rule or case authority the availability of reconsideration of a midtrial ruling on the sufficiency of the evidence. We conclude that it has.

*People v. District Court, supra,* holds that a trial court may correct an erroneous ruling granting a motion for judgment of acquittal without offending the federal or state Double Jeopardy Clause as long as it does so before the jury is dismissed and there has been no demonstrable prejudice to the defense. The court stated that to hold otherwise would discourage trial judges from reconsidering difficult issues once they have announced a preliminary decision. The court noted that a trial court's midtrial correction does not impair the primary interest that the Double Jeopardy Clause seeks to accommodate—the elimination of the threat of multiple trials for the same offense. A corrective ruling during the trial does not result in any additional governmental attempt to convict a defendant before a different jury or undermine a defendant's interest in having the trial completed by the particular jury impaneled and sworn to resolve the case. Indeed, it is the threat of multiple trials for the same crime, subjecting the defendant to embarrassment, expense, and a perpetual state of anxiety and insecurity, that the Double Jeopardy Clause primarily seeks to eliminate. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977).

■ Accordingly, a defendant on trial in Colorado is on notice that a midtrial order granting a motion for judgment of acquittal is not final and is subject to change until the jury is dismissed. Therefore, contrary to the result in *Smith,* in this state the Double Jeopardy Clause's guarantee does not "be-come a potential snare for those who reasonably rely upon it," *Smith v. Massachusetts, supra,* 543 U.S. at 473, 125 S.Ct. at 1137, precisely because a defendant may not, as a matter of law, rely upon the finality of a judgment of acquittal until the jury is dismissed.

■ Hence, the Double Jeopardy Clause is not violated when a jury's verdict is rendered after an erroneous midtrial acquittal has been granted and then is reversed by the trial court. Nor is there a violation when, as here, the charges have been submitted to the jury and a guilty verdict has been returned, but the verdict has been erroneously set aside by the trial court and reinstated on appeal. *See Smith v. Massachusetts, supra; see also People v. Ganatta,* 638 P.2d 268, 274 (Colo.1981); *People v. Scott,* 10 P.3d 686, 688 (Colo.App.2000).

It is true, as defendant asserts, that in the Colorado cases upon which we rely, the courts retracted the acquittals because of mistakes in determining the elements of the charges and the like, and not, as asserted here, because the insufficiency of proof was cured by the defendant's case. However, because we have concluded that the trial court erred in the first instance in granting the judgment of acquittal, it does not matter that the trial court later determined that defendant's own evidence supplied what it believed was sufficient evidence to show intent. Our conclusion that the prosecution presented sufficient evidence from which to infer that element means that the trial court's reasons for reinstating the charges are of no significance.

To the extent that defendant asserts that, under this analysis, he would be the first accused person in Colorado to be subjected to post-acquittal factfinding by a jury, we reject the assertion. As analyzed above, the acquittal must be "final" for such a result to occur, and here, the acquittal was not final, given that *People v. District Court, supra,* expressly notifies all Colorado defendants that a midtrial acquittal is not final until the jury is discharged.

■ Defendant also asserts that he was prejudiced by the court's initial acquittal and

later reversal. We acknowledge that in *People v. District Court, supra,* 663 P.2d at 621, the court indicated that "we see no reason why the double jeopardy prohibition should preclude a trial judge from correcting during the trial itself an erroneous ruling on a motion for a judgment of acquittal when no threat of retrial would arise from the correction *and the accused has suffered no demonstrable prejudice by reason of the correction*" (emphasis supplied). Assuming that Colorado imposes a "no prejudice" requirement to validate the correction of an erroneously granted midtrial acquittal, we nevertheless perceive no prejudice here.

When the trial court announced its decision to reinstate the charges and defendant objected, the prosecution asked defendant to make an offer of proof to demonstrate how, if at all, he had been prejudiced, but defendant offered nothing in response. On appeal, defendant claims that there was prejudice because, had the defense not called witnesses, the court would not have reconsidered the judgment of acquittal. However, because defendant was on notice that a midtrial acquittal was not final and was subject to correction, *see People v. District Court, supra,* and because he still had to defend the remaining charge of causing serious bodily injury to an at-risk adult by criminal negligence, he had to make a choice of whether to present the witnesses or not. This was not a choice dictated only by the judgment of acquittal.

Furthermore, to the extent defendant argues per se prejudice under *Smith,* we reject the contention. As we read *Smith,* per se prejudice can occur only when a state does not have a pre-existing rule placing a defendant on notice that a judgment of acquittal is not final, the defendant relies on the acquittal, and the defendant is therefore actually exposed to double jeopardy by the reversal of an acquittal. Colorado case authority makes it clear that a defendant is only exposed to double jeopardy in this context when the midtrial acquittal is followed by the dismissal of the jury and an attempt by the state to conduct further proceedings. That has not occurred here.

## III.

We also reject defendant's contention that the trial court's reinstatement of the assault charge chilled his right to present a defense.

Few rights are more fundamental than the right of the accused to put before the jury evidence that might influence the determination of guilt. *People v. Richards,* 795 P.2d 1343, 1345 (Colo.App.1989). However, the right to present a defense is not absolute. *People v. Watkins,* 83 P.3d 1182 (Colo.App.2003). Ordinarily, it requires only that the accused be permitted to introduce all relevant and admissible evidence. *People v. Harris,* 43 P.3d 221, 227 (Colo.2002); *People v. Scearce,* 87 P.3d 228, 233 (Colo.App.2003).

"The right to offer the testimony of witnesses ... is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [fact finder] so it may decide where the truth lies." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *see People v. Chastain,* 733 P.2d 1206, 1212 (Colo.1987) (noting that a defendant's right to offer testimony at trial is a "fundamental element of due process of law").

Here, we do not perceive that reinstating the assault charge chilled defendant's right to present a defense. The charge was reinstated before the case was submitted to the jury. Defendant had an opportunity to present whatever evidence he wished to rebut the prosecution's case. Defendant did not indicate that he wanted to present additional witnesses or evidence or that he would have changed his strategy and would have declined to present the witnesses he did if he had known the trial court might revisit its ruling. The testimony of his witnesses was that defendant did what he could for his recalcitrant and uncooperative father.

For similar reasons, because defendant was permitted to introduce all relevant and admissible evidence that he wished to present, the trial court erred in granting a judgment of acquittal on the second degree assault charge during the sentencing pro-

ceeding. Accordingly, we must remand for reinstatement of that conviction.

## IV.

■ On his appeal, defendant contends that the prosecution failed to establish the existence of a duty imposed by law. Specifically, he asserts that the prosecution did not allege that he performed any act that constituted second degree assault or causing serious bodily injury to an at-risk adult by criminal negligence. Instead, the prosecution charged that he committed a crime of omission, which required it to prove the existence of a duty imposed by law that he breached. We find no error.

Section 18–1–502, C.R.S.2006, provides, in pertinent part, that "[t]he minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing." Section 18–1–501(2), C.R.S.2006, defines "conduct" as "an act or omission," and § 18–1–501(7), C.R.S.2006, defines "omission" as "a failure to perform an act as to which a duty of performance is imposed by law." Defendant asserts that these provisions indicate he cannot be convicted of second degree assault or causing serious bodily injury to an at-risk adult by criminal negligence unless there exists a duty imposed by law that he failed to perform.

The People respond that because both second degree assault and causing serious bodily injury to an at-risk adult by criminal negligence have a mens rea requirement, there is no necessity to prove the existence of a duty imposed by law.

We will assume that the prosecution had to prove the existence of a duty imposed by law that defendant breached in order to prove criminal liability for an omission. *See People v. Thoro Products Co.*, 45 P.3d 737, 745–46 (Colo.App.2001), *aff'd*, 70 P.3d 1188 (Colo. 2003). Even so assuming, we conclude that, contrary to defendant's contention, a power of attorney executed by both father and defendant created the duty.

Defendant and father both signed a statutory power of attorney in the form specified in § 15–1–1302, C.R.S.2006. That statute provides that when the form is used, it "shall have the meaning and effect prescribed in this part 13." Section 15–1–1302(1), C.R.S. 2006.

Although the power of attorney states that "this form does not impose a duty on your agent to exercise granted powers," it states immediately thereafter that "when powers are exercised, your agent must use due care to act for your benefit."

Among other things, the power of attorney grants to defendant the power to act in matters concerning "personal and family maintenance." Section 15–1–1314, C.R.S.2006, which deals with interpretation of a statutory power of attorney, states, with regard to personal and family maintenance, that an agent has the power to perform acts necessary to maintain the customary living standard of the principal, to provide domestic help, and to pay for medical and custodial care.

During trial, the prosecution offered evidence that defendant had exercised the powers contained within the power of attorney. Witnesses testified that defendant had presented the power of attorney to father's creditors; that defendant was living in father's house; that he was taking care of father's property; that he was providing father meals and buying groceries for them both; that he was cleaning father's house; and that he was asserting to friends and neighbors that caring for father was his sole responsibility and occupation.

Because one of the powers that defendant exercised, dealing with personal and family maintenance, required him to maintain father's standard of living, he had a legal duty to exercise that power with due care for father's benefit. *See Davis v. Commonwealth*, 230 Va. 201, 205, 335 S.E.2d 375, 378 (1985)(legal duty established by defendant's conduct as victim's representative, in living in victim's home, buying groceries, and holding herself out as having sole responsibility for victim's care). Defendant was not a mere volunteer; he unquestionably held and wielded the legal authority to act under the power of attorney.

Accordingly, the jury could find that defendant had a duty to maintain father's standard of living or provide appropriate custodial care, and that he breached that duty.

Defendant's reliance upon *Billingslea v. State,* 780 S.W.2d 271 (Tex.Crim.App.1989), for a contrary result is misplaced. There, the court analyzed a Texas statute that made it a criminal offense for a person intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, to engage in conduct that causes an individual who is sixty-five years or older to sustain bodily injury. The court held that the indictment was fundamentally defective because it failed to include a statutory duty imposing a punishable omission. As we read the case, however, the court reached that conclusion because of the existence of a separate Texas statute, since modified, which stated that "a person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to perform the act." *Billingslea v. State, supra,* 780 S.W.2d at 274 (quoting prior version of Tex. Penal Code § 6.01). The court indicated that this provision meant that, in Texas, a *statute* must itself provide that an omission is an offense, or a *statute* must otherwise prescribe a duty to act. *See State v. Guevara,* 137 S.W.3d 55, 56–57 (Tex.Crim.App.2004).

We perceive no such limitation in Colorado. Nothing in our criminal code indicates that the "duty imposed by law" is limited to those specified in criminal statutes. *See People v. Thoro Products Co., supra* 45 P.3d at 746 (duty imposed by law found in health department regulations). Accordingly, *Billingslea* is inapposite.

In light of this conclusion, we need not address whether there are statutory or common law provisions that would also impose a legal duty upon defendant to provide care for father.

## V.

■ Defendant asserts that the information failed to charge an offense because it did not allege the source or scope of any duty of performance imposed upon him by law. We disagree.

■ Although objections to the form of an information are waived if not raised before trial, *People v. Hunter,* 666 P.2d 570, 572 (Colo.1983), a substantive defect may be raised at any time in the proceedings because it is jurisdictional in nature. Crim. P. 12(b)(2); *Gomez v. People,* 162 Colo. 77, 80, 424 P.2d 387, 389 (1967), *overruled on other grounds by People v. Williams,* 984 P.2d 56, 61–63 (Colo.1999).

■ The notice given by the information "must be sufficient to advise the accused of the charges, to give him a fair and adequate opportunity to prepare his defense, and to ensure that he is not taken by surprise because of evidence offered at the time of trial." *People v. Cooke,* 186 Colo. 44, 46, 525 P.2d 426, 428 (1974). The notice requirement is also intended to protect the defendant from further prosecution for the same offense. *People v. Madden,* 111 P.3d 452, 456 (Colo. 2005); *People v. Williams, supra,* 984 P.2d at 60. If an information fulfills these purposes, it invokes the jurisdiction of the court. *People v. Williams, supra,* 984 P.2d at 60. If, however, the information fails to satisfy these requirements, it is substantively defective, and a conviction obtained pursuant to such an information is void. *Cervantes v. People,* 715 P.2d 783, 785 (Colo.1986).

■ In determining the sufficiency of a particular charge in an information, a court restricts its examination to the four corners of that charge to ensure that the essential elements of a crime are directly alleged or incorporated by specific reference. *People v. Williams, supra,* 984 P.2d at 60.

Here, the information specifically tracked the language of the second degree assault statute, asserting that "between January 1, 2003 and December 16, 2003, James Michael Madison, with intent to cause bodily injury to another, unlawfully and feloniously caused serious bodily injury to [father]. Further, the victim was an at-risk adult, in violation of ... § 18–6.5–103(3)(b) and [§ ]18–3–203(1)(g)."

The information also tracked the language of the at-risk adult statute, asserting that

defendant "with criminal negligence engaged in conduct which resulted in serious bodily to [father], an at-risk adult in violation of ... § 18–6.5–103(2)(b) [C.R.S.2006]."

Because the essential elements of the crimes are directly alleged, the information is substantively sufficient and therefore invoked the jurisdiction of the court.

Relying upon *People v. Beruman*, 638 P.2d 789 (Colo.1982), defendant nevertheless asserts that when a crime is alleged to have been committed by omission as here, the information must also set out the source of the duty imposed by law that the defendant allegedly failed to perform. He asserts that merely reciting the statutory language is insufficient. We disagree.

In *Beruman*, the defendant was charged with second degree official misconduct for failure to properly respond to a report of suspected child abuse. The statute he was charged with violating provided that a public servant committed an offense if he knowingly, arbitrarily, and capriciously refrained from performing a duty imposed upon him by law. The court held that the indictment was insufficient to charge that the defendant refrained from performing a duty imposed upon him by law because it did not describe the source of the duty alleged to be imposed by law. Essentially, the defendant was not informed what duties he had failed to perform so that he could prepare a defense.

Neither § 18–3–203(1)(g) nor § 18–6.5–103(2)(b) depend on another source of duty. Every person has a duty to refrain from violating those statutory provisions. Unlike in *Beruman*, the statutes do not require a reference to an external source of duty. *See People v. Arevalo*, 725 P.2d 41 (Colo.App.1986)(addressing similar contention, court declined to require indictment to identify external source of duty in child abuse statute). Moreover, the acts constituting second degree assault and criminal negligence resulting in serious bodily injury to an at-risk adult are described by the statutes, and therefore defendant's reliance upon *People v. Tucker*, 631 P.2d 162 (Colo.1981), and related cases is also misplaced.

In addition, because defendant was well aware of the charges against him, he was able adequately to prepare a defense, and the information provided him with adequate double jeopardy protection, the purposes of an information are fulfilled here. *See People v. Rodriguez*, 914 P.2d 230, 256–57 (Colo.1996).

Accordingly, we reject this contention.

## VI.

■ Defendant next asserts that the court's novel application of the criminal charges to his alleged omission deprived him of his due process right to fair warning. We disagree.

■ A criminal statute must give fair warning of the conduct that it proscribes. *Bouie v. City of Columbia*, 378 U.S. 347, 350–51, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964).

> The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

*United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

■ A deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. *Bouie v. City of Columbia, supra*, 378 U.S. at 352, 84 S.Ct. at 1702. Thus, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. The test is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal. *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997).

■ Here, defendant asserts that he did not know of, and the state had taken no

reasonable steps to inform him of, his duty to act and of the criminal penalty for failure to do so. However, defendant signed the power of attorney. A person is presumed to know the contents of any document he signs. *See Rasmussen v. Freehling*, 159 Colo. 414, 417, 412 P.2d 217, 219 (1966) (in the absence of fraud, one who signs a contract is barred from claiming he is not bound by what he has signed); *Cordillera Corp. v. Heard*, 41 Colo. App. 537, 540, 592 P.2d 12, 14 (1978), *aff'd*, 200 Colo. 72, 612 P.2d 92 (1980) (party signing an agreement is presumed to know its contents).

The power of attorney imposed a legal duty of due care upon defendant when he undertook to perform one of the duties specified. Thus, regardless of whether any state statute imposes upon an adult child the duty to care for a parent, defendant had actual notice and knowledge of the duty he undertook and later failed to perform.

For these reasons, the second degree assault statute and the criminal negligence against an at-risk adult statute, either standing alone or as construed, made it reasonably clear at the relevant time that defendant's conduct was criminal. We therefore reject this contention.

## VII.

Defendant next asserts that the evidence was insufficient to sustain a conviction for a felony crime against an at-risk adult and was sufficient only for conviction for a misdemeanor crime. We disagree.

Section 18-6.5-103(2)(b) provides in pertinent part that "[a]ny person whose conduct amounts to criminal negligence ... commits ... [a] class 5 felony if such negligence results in serious bodily injury to an at-risk adult." The statute defines "criminal negligence" as follows: "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." Section 18-1-501(3), C.R.S. 2006.

Defendant argues that proof of criminal negligence requires proof of an act, which is defined as a bodily movement, § 18-1-501(1), C.R.S.2006, and the prosecution did not allege or prove that he performed any bodily movement or other act that constituted a violation of the at-risk statute. However, this assertion ignores the part of the statute that proscribes "conduct" that "amounts to criminal negligence." "Conduct" is defined as "an act *or omission* and its accompanying state of mind." Section 18-1-501(2) (emphasis supplied). Therefore, § 18-6.5-103(2)(b) does not require the commission of an act to trigger its requirements.

This conclusion is not affected by the existence of § 18-6.5-103(6), C.R.S.2006, which makes it a misdemeanor offense for a person knowingly to neglect an at-risk adult. The provisions of that section do not require the result of death, serious bodily injury, or bodily injury, unlike the subsections of § 18-6.5-103(2).

To the extent that defendant asserts as a separate claim that the evidence was insufficient to support his conviction for violation of the crimes against at-risk adults statute, we reject it for the reasons stated above in part I.

## VIII.

Defendant contends that the trial court failed properly to define "legal duty" and to instruct the jury that it must find the existence of such a duty beyond a reasonable doubt. Defendant asserts that this failure deprived him of his right to a jury finding of every fact necessary to convict him of the charges. We disagree.

We first note that defendant did not request the trial court to give such an instruction nor did he object to the instruction that was given on these grounds. When, as here, no contemporaneous objection is made, appellate review is limited to determining whether there is plain error. Crim. P. 52(b); *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

Plain error is error that is obvious and substantial. It exists when, after a review of the entire record, a court can con-

clude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller, supra,* 113 P.3d at 750.

 As applied to jury instructions, plain error review requires that the defendant must demonstrate not only that the error is obvious and affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction. Specifically, the court's failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law. *People v. Miller, supra,* 113 P.3d at 750.

Here, the trial court instructed the jury as follows:

Before you may find that there was criminal negligence in this case based on what you may find to be conduct which qualifies as an omission as defined in these instructions, you must first find that there was a legal duty to act on the part of the defendant. Proof of criminal negligence requires that there be a legal duty to act and that conduct, whether by act or by omission, occurred when through a gross deviation from the standard of care that a reasonable person would exercise, the defendant failed to perceive a substantial unjustifiable risk that a result will occur or that a circumstance exists.

Defendant asserts that the jury was not instructed that it must make the required finding beyond a reasonable doubt. However, other instructions stated that the prosecution had the burden to prove beyond a reasonable doubt the existence of all the elements necessary to constitute the crime charged and that its failure to do so required a not guilty verdict. One element of the crime here required the prosecution to prove "conduct" that "resulted in serious bodily injury." Because other instructions covered the prosecution's burden of proof, we reject this assertion.

Defendant also asserts that the court failed to provide the meaning of the term "legal duty." However, another instruction defined "conduct" as "an act or omission," and yet another defined "omission" as a "failure to perform an act as to which a duty of performance is imposed by law," which has a meaning similar to, if not the same as, "legal duty."

Accordingly, we find no error, plain or otherwise.

That part of the judgment granting defendant's motion for judgment of acquittal on counts one and two, second degree assault and the crime of violence sentence enhancer, is reversed. The balance of the judgment of conviction is affirmed, and the case is remanded with directions to reinstate the judgment of conviction on counts one and two and to impose an appropriate sentence upon the reinstated conviction.

Judge HAWTHORNE and Judge BERNARD concur.